**Walter S. SHELTON, Plaintiff,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al., Defendants.**

**Civ. A. No. 799–72C2.**

United States District Court, W. D. Washington.

March 19, 1973.

**4**

Darrell D. Hallett of Preston, Thorgrimson, Ellis, Holman & Fletcher, Seattle, Wash., for plaintiff.

Stan Pitkin, U. S. Atty., and Charles Mansfield, Asst. U. S. Atty., Seattle, Wash., John Pagano, Equal Employment Opportunity Comm., Washington, D. C., Chester F. Relyea, Regional Counsel, Equal Employment Opportunity Comm., San Francisco, Cal., for defendants.

Before WRIGHT, Circuit Judge, and EAST and SHARP, District Judges.*

## MEMORANDUM OPINION AND ORDER

SHARP, District Judge:

This is a suit by a federal non-probationary employee who was discharged from his employment without first being provided a formal hearing. Since the plaintiff seeks to enjoin his discharge on the theory that Title 5 U.S.C. § 7501 as applied to him violates the Fifth Amendment to the United States Constitution, a three-judge District Court was convened.

At the time of his termination, the plaintiff, Walter S. Shelton, was the District Director of the Seattle District Office of the Equal Employment Opportunity Commission (hereinafter EEOC). He was initially employed by the EEOC on August 29, 1966, as an Equal Employment Officer, Grade GS–12. After several intervening promotions, Mr. Shelton was assigned, on July 11, 1971, to the position of District Director, Seattle District Office, and his grade classification was increased to GS–14.

By letter dated July 3, 1972, plaintiff was informed that his superior, the Regional Director of the San Francisco Region, proposed to recommend his removal from his position as District Director. This notice detailed numerous specific charges, which may be summarized as a failure to carry out his manifold responsibilities as the highest ranking EEOC officer in this area, including, generally, failure to recruit, to supervise and to follow administrative procedures.

---

* Honorable Eugene A. Wright, United States Circuit Judge for the Ninth Circuit, William G. East, Senior United States District Judge for the District of Oregon, and Morell E. Sharp, United States District Judge for the Western District of Washington, constituting a statutory three-judge District Court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated December 14, 1972.

He was initially granted fifteen (15) days, including thirty-two (32) hours of official time, to review the material relied on in support of the charges and to reply to the charges orally or in writing with accompanying affidavits. If he chose to reply orally, he could be accompanied by a representative of his own choosing. After two extensions of time, Mr. Shelton elected to respond by letter dated August 29, 1972, addressed to his Regional Director. This letter was submitted to the EEOC Personnel Director based in Washington, D. C., who, on December 1, 1972, replied by letter decision removing Mr. Shelton from office effective December 8, 1972. This decision struck several of the specific charges alleged in the initial notice from the Regional Director, but the general tenor and gravity of the remaining charges stayed the same.

By letter dated December 5, 1972, plaintiff notified the EEOC the he was appealing the decision to remove him, by following agency appeal procedures. Presumably, that agency is presently engaged in processing his appeal through its post-termination procedure, with an independent examiner conducting an adversary-type hearing.

Plaintiff also filed a complaint and motion in the U. S. District Court seeking a temporary restraining order to prevent his discharge until a motion for a preliminary injunction could be heard. The temporary restraining order was granted on December 8, 1972, and defendant was enjoined from discharging plaintiff prior to 5:00 p.m. on December 12, 1972. A hearing was held on December 12, 1972, and the District Court granted the plaintiff's request to convene a three-judge court but refused to enjoin the defendant from discharging plaintiff. Plaintiff was discharged from the EEOC by notice effective December 13, 1972.

The thrust of petitioner's argument is that the Fifth Amendment to the Constitution of the United States requires an adversary hearing before an impartial decision maker *prior* to termination for cause. Congress has declared otherwise. Title 5 U.S.C. § 7501:

"§ 7501. Cause; procedure; exception

(a) An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service.

(b) An individual in the competitive service whose removal or suspension without pay is sought is entitled to reasons in writing and to—

(1) notice of the action sought and of any charges preferred against him;

(2) a copy of the charges;

(3) a reasonable time for filing a written answer to the charges, with affidavits; and

(4) a written decision on the answer at the earliest practicable date.

Examination of witnesses, trial, or hearing is not required but may be provided in the discretion of the individual directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, the reasons for and the order of removal or suspension without pay, and also the reasons for reduction in grade or pay, shall be made a part of the records of the employing agency, and, on request, shall be furnished to the individual affected and to the Civil Service Commission."

The defendant does not argue that plaintiff, as a non-probationary employee, is not entitled to procedural due process rights when contesting his termination. Instead, it argues that the procedure available meets constitutional requirements. This procedure does provide a full-scale evidentiary hearing before an impartial decision maker *following* termination in addition to the pre-termination procedures required by the statute and accorded petitioner.

While the issue posed is not new or novel to the courts, we are aware that recent opinions in the area of procedural due process call for constant re-examination of hearing procedures followed by state and federal governments. This is true not only in the area of public employment but in other areas where an individual may be deprived of a significant property interest by the exercise of the discretionary power of government agencies or by the exercise of power by an adverse party acting under color of law. Plaintiff refers us to several of the more recent cases discussing this problem. For example, in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the court struck down the Wisconsin garnishment statute for failure to provide notice and opportunity for hearing prior to deprivation of wages due. While the court recognized that hearing on the underlying merits need not be held prior to seizure, it concluded that notice and opportunity to be heard were due process requirements which must be provided. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), extended the *Sniadach* holding from garnishments to pre-judgment replevins. There, the replevin statutes of Florida and Pennsylvania were violative of due process in that replevin applicants were not required to make any showing whatsoever prior to seizure of their adversary's property.

In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the court held that an unwed father cannot be deprived of custody of his children without a prior hearing on his fitness. Although the opinion was based primarily on due process considerations, there was an element of equal protection involved since all other parents were afforded a hearing on fitness prior to the taking of their children. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), involved the constitutionality of New York welfare regulations allowing the termination of benefits without prior notice and hearing.

Emphasizing the "brutal need" of welfare recipients, the court specified that when the means to obtain essential food, clothing, housing and medical care is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process.

While these decisions shed light on due process requirements whenever an individual is summarily deprived of a significant property interest, they do not stand for the proposition that procedural due process always and inflexibly requires a full-scale adversary hearing prior to every seizure or termination of a property interest. Indeed, in Goldberg v. Kelly, *supra*, the court contrasted welfare deprivation with certain other deprivations, including that of government employment, as follows:

> "Thus the crucial factor in this context—a factor not present in the case of the black-listed government contractor, *the discharged government employee*, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." 397 U.S. at 264, 90 S.Ct. at 1018 (first emphasis supplied).

Also, in Fuentes v. Shevin, *supra*, the court recognized, by footnote reference to Cafeteria and Restaurant Workers Union Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), that an unusually important government need existence in government employment may justify the postponement of any hearing until after the event. And, even more recently, this Circuit, in Two v. United States et al., 471 F.2d 287 (9th Cir. 1972), denied a pre-termination hearing to a woman naval officer terminated after thirteen years of service:

> "Lt. Two also contends that she has a right to an administrative hearing prior to her discharge. There is no

merit in this contention. Lt. Two has a post-discharge hearing available to her. 10 U.S.C. § 1552; *see* Sohm v. Fowler, 124 U.S.App.D.C. 382, 365 F. 2d 915 (1966). A pre-termination hearing is not always required. Goldberg v. Kelly, 397 U.S. 254, 263, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970)."

The seminal case in the area of pre-termination due process for government employees is Cafeteria Workers, *supra.* There, a short-order cook was denied access to a naval installation where her employer operated a concession. She received no hearing or other requisites of due process either before or after termination of her security clearance. While the thrust of the opinion was that her interest was not such that she deserved protection of due process at all, putting reliance on the now abandoned concept that her interest was a privilege rather than a right, the case has been cited constantly for the proposition that government employment is an extraordinary situation calling for a weighing of the governmental interest involved against the interests of the individual in his continued employment. This balancing of interest approach was stated generally by the court:

"As these and other cases make clear, consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." 367 U.S. at 895, 81 S.Ct. at 1748–1749.

The proposition that due process procedures are flexible, and are dependent upon the particular interests involved, was referred to most recently by Chief Justice Burger in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). There, the court held that minimal due process requirements for parole revocation must include a preliminary inquiry in the nature of a probable cause hearing to be conducted at or near the place of arrest as promptly as convenient after the arrest. In arriving at its conclusion the court once again cited Cafeteria Workers, *supra,* and restated its basis proposition:

"Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. at 481, 92 S.Ct. at 2600.

The Court then proceeded to examine the nature of process that was due a parolee upon his arrest, concluding that an informal probable cause inquiry before a parole officer other than the officer making the arrest or recommending the revocation met the requirements of due process.

Professor Kenneth Culp Davis seems to approve the "flexible" approach in his work on administrative law:

"The tendency of courts, aided and abetted by practitioners, has been to refuse to recognize any middle position between requiring a trial-type hearing and not requiring it. Often a trial-type hearing is too cumbersome or too expensive or both, and yet some procedural protection is desirable. *Often a good procedure is to let a party know the nature of the evidence against him and to listen to what he has to say.*" K. C. Davis, Administrative Law Text 106 (3rd ed. 1972) (emphasis in original).

With these principles as guideposts, we examine first the nature of the interests involved in the position held by plaintiff and next the procedures made available to the plaintiff for the presentation of his grievance.

Plaintiff was the District Director of the Seattle Office of the EEOC and had the sole responsibility for investigating complaints of employment discrimination in Washington and Alaska.

Only the EEOC Regional Director in San Francisco, who currently has responsibility for EEOC activity in nineteen states, and the five-member Equal Employment Opportunity Commission appointed by the President stood above the plaintiff in the EEOC chain of authority. Congress has recently greatly expanded the responsibilities of the EEOC by amending § 706 of the Civil Rights Act of 1964 (Pub.L. 92–261, § 4, effective Mar. 24, 1972, 86 Stat. 104, amending 42 U.S.C. § 2000e–5). The EEOC now has the power to prosecute court actions as well as to seek conciliation in discrimination disputes. Thus, now even more than before, the Director of an EEOC District Office is in an extremely sensitive position, and the Government has an unusually strong interest in assuring that that position is filled as competently as possible.

■ However, even though the plaintiff's position is a particularly important and sensitive one, he is entitled to all of the procedural protection accorded federal non-probationary employees by Congress. If the proper sequence of appeals is followed, two post-termination hearings are available, one by the agency and one by the Civil Service Commission. 5 C.F.R. §§ 771.201–226 and 752.-205. In addition, 5 U.S.C. § 7501, *supra*, provides substantial pre-termination rights.

■ Section 7501(b)(1–2) and its implementing regulation, 5 C.F.R. § 752.202(a)(1), require that the employee be notified of the charges against him at least thirty (30) days prior to termination. Also, the charges must be specific and include supporting details and material. Chap. 752, Adverse Actions by Agencies, subchap. 2–2(c), Federal Personnel Manual (hereinafter FPM). The EEOC is bound by its original allegations and must begin the process anew if they seek changes in the charges. Chap. 752, subchap. 2–6, FPM.

Section 7501(b)(3) requires reasonable time for filing a written reply with affidavits. The regulations provide that the employee may make an oral reply as well as a written one if he chooses. Chap. 752, subchap. 2–5, FPM. Plaintiff in this case was given the opportunity to be accompanied by a representative of his choice if he made a personal appearance. Regulations also require that the employee be allowed official time to prepare his reply. Chap. 752, subchap. 2–2(e)(3), FPM. Section 7501(b)(4) guarantees a written decision.

The remainder of § 7501 assures that the file in the case will include all materials which influenced the decision. Thus, although plaintiff's written reply in the present action was addressed to the Regional Director, it became a part of his file and was considered as his formal reply by the Personnel Director in Washington, D. C., who made the ultimate § 7501(b)(4) decision.

■ This procedure is not the hasty peremptory deprivation condemned in so many of the due process cases. Plaintiff was the key figure in the enforcement of a vital government policy —the curbing of discriminatory practices in public and private employment —in the two-state area. He was notified in detail of the charges against him, was given ample time and opportunity to study the material supporting the charges and to appear in person with a representative and with answering affidavits to refute these charges. The termination decision was made by an officer of the agency other than the accusing officer and following this decision he had the right to two full-scale hearings, one before an agency hearing officer and the other before the Civil Service Commission. In our opinion, he has been accorded due process of law.

Plaintiff has called our attention to three cases dealing with public employment, which should be mentioned, but in our opinion each is clearly distinguishable.

The cases of Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, and Board of Regents of State Col-

leges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, both decided June 29, 1972, deal with the question of whether a college professor has a sufficiently strong interest in continued employment to merit due process protection. While the court indicated that either contractual or de facto tenure supported a right to procedural due process protection, neither case sheds any light on the pre-termination hearing question before this court.

A recent three-judge District Court case in Illinois [Kennedy v. Sanchez, 349 F.Supp. 863 (N.D. Ill. 1972)] dealing with the discharge of an EEOC field officer seems to reach a result contrary to our decision. However, the facts in the two cases are dissimilar in several important respects. Thus, the final decision to terminate plaintiff Shelton was made by an impartial agency official, the Personnel Director based in Washington, D. C., rather than the officer initiating the proceedings as in *Kennedy, supra*. The court, in *Kennedy*, recognized this distinction by noting as follows:

> "Because the agency decision is only tentative and the employee has the right to a full evidentiary hearing in his appeal, an official in the same department or agency other than the one who initiates the proceeding may well be sufficiently impartial to satisfy the requirements of due process. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972); Lucas v. Wisconsin Elec. Power Co., 466 F.2d 638 (7th Cir. 1972)." *Kennedy, supra*, at 865, n. 1.

Furthermore, we have in *Shelton* the supervising officer of a large, important branch office as opposed to Mr. Kennedy, a field officer. While this fact alone is not entirely determinative of the constitutional question, it is an important factor to be considered in weighing the governmental interest involved. Again, the court in *Kennedy* recognized this factor in noting:

"This is not to say that the government may not provide for dismissal or suspension without following all of these requirements in narrowly circumscribed circumstances where the government interest in immediate action is especially intense, such as in Cafeteria & Rest. Workers, *supra*. See also Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 2000 n. 23, 32 L.Ed. 2d 556 (1972); Goldberg v. Kelly, 397 U.S. 254, 263 n. 10, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)." *Kennedy, supra*, 349 F.Supp. at 865, n. 3.

And, finally, while the *Kennedy* opinion does not enlighten us as to the particular charges against the plaintiff Kennedy, it does find that the statutory basis for termination as applied to him infringed upon his First Amendment rights of free speech. The First Amendment to the United States Constitution is not involved in the case before this court.

Finding, as we do, that § 7501 is not unconstitutional as applied to the plaintiff, the relief sought is denied and judgment of dismissal may be entered.