**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN HONDA MOTOR CO., INC., et al., Defendants.**

Civ. A. No. 87–3525.

United States District Court, District of Columbia.

May 28, 1992.

Katherine A. Meyer and Eric R. Glitzenstein, Harmon, Curran, Gallagher & Spielberg and Margot E. de Ferranti, Dept. of Justice, Washington, D.C., for plaintiff.

Howard P. Willens, Wilmer, Cutler & Pickering; Mark L. Gerchick, Paul, Hastings, Janofsky & Walker; Charles A. Hunicutt, Robins, Kaplan, Miller & Ciresi; Harry W. Cladouhos, Paul M. Laurenza, Pettit & Martin; and Theodore C. Whitehouse, Wilkie, Farr & Gallagher, Washington, D.C., for defendants.

Lila E. Kirton, Asst. Atty. Gen. of the State of N.Y., New York City.

## MEMORANDUM ON MOTION TO INTERVENE

GESELL, District Judge.

The Court has before it for final resolution a Motion to Intervene for Limited Purpose Requesting Court to Enforce and Modify Consent Decree. The motion was filed on September 17, 1991, and is directed to the Consent Decree approved by the Court on April 28, 1988. Movants represent consumer, pediatric and public interest groups. They contend, in sweeping terms, that the Consent Decree is ineffective, and request that the Court add new provisions and rewrite and strengthen enforcement of existing provisions in a manner that would drastically change the structure of the judgment itself. For example, in their Motion to Enforce and Modify Consent Decree, movants seek to have the Court declare All–Terrain Vehicle ("ATV") use, particularly by children under 16 years old, an imminent and unreasonable hazard, and to have the Court enjoin sales of certain models for use by children and force recall of ATVs sold for such purposes in prior years.

After briefs and supporting documents had been submitted and argument initially heard, the Court, by Memorandum and Order filed December 12, 1991, decided to hold the motion unresolved for three months to allow movants to attempt to perfect their claims by a factual showing. At the time, the Court was satisfied that the Decree was not as effective in all respects as contemplated, but noted its lack of authority to bar the sale of ATVs or to perform the rule-making functions of the Consumer Product Safety Commission ("CPSC") along the lines suggested by movants. In short, the Court gave notice

that its authority was confined to a review of steps taken to implement the Consent Decree within the structure and framework originally agreed upon by the parties. The Court specifically found that movants had failed to make a sufficient showing to justify reopening the judgment in order to bar use of ATVs by children under age 16. Thus, the Court allowed movants three months to present a more complete factual basis justifying their intervention, and indicated that proposed supplementary papers should focus on compliance with and implementation of existing provisions.

During the three-month period, the Court received from the parties extensive briefs and numerous submissions, and now has heard further oral argument. Intervenors seek refinement of certain provisions of the Consent Decree to require, for example, further warnings directed at under-age use, and they continue to allege that the parties have refused to supply information movants claim they need to monitor and test the effectiveness of the Decree, which movants insist is not being implemented to the best of the parties' abilities.

The 57–page Consent Decree sets out a detailed series of initiatives and procedures intended to improve public knowledge of operating hazards related to ATVs, to provide both warnings and training, and to prevent outright solicitation of orders for certain ATVs when under-age use is contemplated. The intended meaning, effect and limitations of the decree are further elaborated in the detailed Memorandum that the Court issued contemporaneously, approving the text.[1] No party to the judgment has sought modification of the decree or alleged any violation of its provisions since the Decree was approved more than four years ago.

Having carefully reviewed the current record, the Court is satisfied that the provisions of the Decree have been implemented in a manner consistent with the judgment. Many ATVs were already in use when the Decree, which was necessarily prospective, was signed. Prior sales and transactions in the second-hand market were affected only indirectly. Because ATV dealers were not parties to the Decree, its effectiveness depended largely on the future good-faith efforts of the CPSC and the American-based distributors of imported ATVs. Any leverage over the dealers under the Decree could only be exercised circuitously, through the distributors' contracts with them.

There is no adequate statistical measurement of the decree's actual success in achieving its goals. Serious injuries and deaths of ATV drivers, including under-age drivers, continue to occur in large numbers, although there does appear to be a decrease in the total number of injuries and deaths suffered as the result of ATV use. *See* 56 Fed.Reg. 47166, 47170 (Sept. 18, 1991). These figures are problematic as gauges of the Decree's success, however, because there is no statistic showing what has occurred solely with regard to those vehicles sold through the distributors by their franchise dealers since the Consent Decree was entered.

On March 31, 1992, the United States filed a Memorandum Re Supplementation of the Record by the United States. Exhibit A to that memorandum is highly relevant and material to the issues before the Court. The exhibit reveals that without the prior knowledge or participation of the Court, CPSC negotiated with each distributor a two-year monitoring program designed to identify, by independent undercover investigation, dealers who had recommended an improperly sized ATV for an under-age rider. Based on random sampling methodology developed by the Commission, 25% of each distributor's dealers were to be inspected each of the two years through on-site visits and telephone inquiry. The program required follow-up of violators and called for disciplinary action by distributors whenever the follow-up produced evidence of a second violation. During the first

---

1. A copy of that Memorandum is attached as an appendix to this Memorandum.

year of this two-year program, compliance by dealers ranged from 77% to 87%—percentages that reveal dramatic improvement over the 44% compliance figure reflected in a random sample conducted in 1989. A number of disciplinary actions against non-complying dealers have been instituted by distributors, and franchise agreements have been strengthened to assure ongoing compliance.

When the Court approved the Consent Decree, it expressed certain reservations and therefore retained jurisdiction.[2] Much of this uncertainty centered on an inability to define with precision the "best efforts" language found on page 4, ¶ B(3), of the Decree. However, the monitoring system outlined above provides the Court with ample evidence that the parties are proceeding with an earnest best-efforts plan to comply at least with the explicit requirements of the judgment concerning warnings, training, and the like. The terms of the settlement appear not to have been breached in any material respect.

In the Consent Decree and in the accompanying Memorandum, the Court left no doubt that it expected to be informed from time to time of any problems or developments relating to compliance with the Decree, because of the Court's continuing obligation under the Retention of Jurisdiction

provision to safeguard the public interest within the structure of the settlement. The recent decision of the Supreme Court in *Rufo v. Inmates of Suffolk County Jail,* —— U.S. ——, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), further demonstrates that in matters of this kind, the court, as well as the parties, has an obligation to assure the effectiveness of consent settlements. Moreover, under the Decree itself, CPSC was obligated to make public certain materials submitted to it relating to the Decree, so that persons and groups like the current movants could also monitor the effectiveness of the settlement.[3] The Court believed, on signing the Decree, that CPSC would make more of an affirmative effort than it has, under the Repository of Materials provision, to inform the interested members of the public, including state regulators and consumer interests, of efforts taken to implement the necessarily general provisions of the judgment. Unfortunately, this provision has been narrowly construed by the parties. Proceedings such as the instant matter are the inevitable result of the apparent inability of interested members of the public to learn in reasonable detail what is taking place.

Movants have performed a valuable service by causing more open discussion of how the judgment is being implemented. Under the specifications of the Decree,

2. The *Retention of Jurisdiction* provision, which is found on page 56 of the Consent Decree, reads as follows:

> The parties agree that the District Court for the District of Columbia shall retain jurisdiction of this cause for the purpose of enabling any of the parties to this final consent decree to apply at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this final consent decree, for the modification or vacating of any provisions, for the enforcement of compliance, and for the punishment of any violation.

3. This provision in its entirety reads as follows under the heading *Repository of Materials:*

> Subject to subparagraph 1 of this paragraph, the CPSC shall maintain in the CPSC Public Reading Room, with copies in the CPSC regional centers, a public file of all materials submitted to it pursuant to the con-

sent decree and all materials submitted to it by the public which relate to this final consent decree, to the extent permitted by the trade secret and confidentiality provisions of Section 6(a) of the Consumer Product Safety Act, 15 U.S.C. § 2055(a), 18 U.S.C. § 1905, and 5 U.S.C. § 552(b)(4). Defendant shall be provided a copy of any material related to it or its products, or to ATVs in general, and provided an opportunity to comment, at least 20 days before that material is to be made publicly available. Any comments by defendant shall be included with that material in the public file, provided, however, that any such comments that raise issues of confidentiality or trade secrets shall be treated in accordance with the CPSC's normal procedures. Without waiving any substantive rights otherwise provided by law, the provisions of this subparagraph shall apply in lieu of any otherwise applicable procedures required by Section 6(b)(6) of the Consumer Product Safety Act, 15 U.S.C. § 2055(b)(6).

however, only CPSC has the ability or the authority over the long haul to remedy the shortage of information concerning the implementation and effectiveness of the plan envisioned in the judgment. Some of the information that movants seek either is not available or has not been compiled. Nonetheless, a more generous disclosure attitude on the part of the Commission would better serve the Court and the public, and would undoubtedly contribute to the achievement of the goals stated by CPSC as grounds for filing this action in the first place.[4] Although the movants have made an insufficient showing to warrant reopening the settlement or modifying the terms of the Decree as the method for addressing these issues, see *Rufo, supra;* see also *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) (holding that in cases not involving institutional reform, only a "clear showing of grievous wrong evoked by new and unforeseen conditions" will suffice to justify reopening a consent judgment), it does appear that the government may have lost the enthusiasm it had when it filed its original complaint in this action for attacking the obvious dangers related to ATV use. *Compare* Complaint, at 10 ("The risk of harm presented by ATVs is evident from the alarming and tragic number of deaths and severe personal injuries which have resulted from reasonable, foreseeable use of ATVs since 1982.") *and* Consent Decree, at 53 (reserving rights to CPSC to initiate further rulemaking to address ongoing dangers associated with ATV use) *with* 56 Fed.Reg. at 47166 ("[A] product standard that would adequately reduce deaths and injuries from ATVs is not feasible at this time."). In essence, the Commission has elected not to exercise its statutory authority to regulate or even ban the vehicles that it had concluded after extensive study were unreasonably dangerous, see Complaint, at 1, 10; *cf.* 56 Fed.Reg. at 47173 (stating that "ATV riding remains a potentially hazardous activity"), and instead to take the far less aggressive route of simply monitoring compliance with the Decree and "evaluating a possible program that could provide the governments of selected states ... with ATV background and technical information, injury data, and model legislation." 56 Fed.Reg. at 47173. Such a decision is beyond the power of this Court to review in the current context.[5] The issues that remain are matters best suited for consideration by federal and state legislators.

Movants have failed to establish any facts that create a basis for altering their prior useful participation as *amici.* The Court continues to feel that intervention by the movants would not be appropriate, see *United States v. American Honda,* Memorandum and Order (D.D.C. March 4, 1988); and in any case, they have not shown any grounds for reopening or modifying the Decree. The motion to intervene is therefore denied. An appropriate Order is filed herewith.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that the Motion to Intervene For Limited Purpose Requesting Court to Enforce and Modify Consent Decree, filed September 17, 1991, is denied.

---

4. For example, while movants have presented no concrete facts establishing that the Repository provision has been violated, it is apparent that information concerning the undercover enforcement agreements could easily have been released while initially protecting names of suspected offending dealers or individuals.

5. Indeed, the decision of CPSC to terminate its rulemaking process in relation to ATVs has been appealed to the D.C. Circuit. *See Consumer Federation of America v. CPSC,* No. 91–1551 (D.C.Cir.) (set for argument on January 15, 1993).

APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

United States of America

Plaintiff,

v.

AMERICAN HONDA MOTOR CO., INC.

HONDA MOTOR CO., LTD.

HONDA RESEARCH & DEVELOPMENT CO., LTD.

YAMAHA MOTOR CO., LTD.

YAMAHA MOTOR CORP., U.S.A.

SUZUKI MOTORS CO., LTD.

U.S. SUZUKI MOTOR CORP.

KAWASAKI HEAVY INDUSTRIES LTD.

KAWASAKI MOTORS CORP., U.S.A.

POLARIS INDUSTRIES, L.P.

Defendants.

MEMORANDUM AND ORDER

The Court has before it for approval or disapproval a proposed Final Consent Decree [1] which may terminate this litigation.

The complaint was filed December 30, 1987, against five distributors of all-terrain vehicles ("ATVs"). A preliminary injunction was simultaneously filed by consent, approved by the Court and became immediately effective. The proposed Final Consent Decree was filed on March 14, 1988 and was served on various interested consumer groups and others who had notified the Court of possible objections and had been designated *amici* [2] with full rights to brief and argue. After briefing by all concerned, extensive oral argument was heard on April 18, 1988.

The complaint is the culmination of a protracted investigation by the Consumer Product Safety Commission ("CPSC") and others into deaths and serious injuries associated with ATVs. These vehicles are widely sold throughout the United States by one or more of the defendants to children and adults for recreational or utility purposes. ATVs are distributed in a variety of models, both three-wheeled and four-wheeled. They are characterized by large, low-pressure tires, a relatively high center of gravity, straddle seating and handlebar steering, and are intended for operation over rough and varied off-highway terrain by a single individual.

Prior to the filing of the complaint, the danger of death or serious injury associated with the operation of ATVs received public attention and considerable comment. In May, 1985, CPSC published in the *Federal Register* an Advance Notice of Proposed Rulemaking which included a preliminary determination that ATVs may present an unreasonable risk of injury. Advance Notice of Proposed Rulemaking, 50 Fed.Reg. 23,139 (May 31, 1985). The same month hearings also commenced on the alleged hazards before subcommittees of both the Senate and the House of Representatives. The Commission received some 3,000 comments in response to its Advance Notice, held public hearings and then directed a Task Force to investigate, to monitor devel-

---

1. In fact, two proposed Final Consent Decrees have been submitted, one for the four defendants which are wholly-owned American subsidiaries of Japanese concerns, American Honda Motor Co., Inc., Yamaha Motor Corp., U.S.A., U.S. Suzuki Motor Corp., and Kawasaki Motors Corp., U.S.A., and another for the American-owned concern, a smaller, regional distributor, Polaris Industries, L.P. The proposed consent judgments contemplate dismissal of the parent Japanese companies, without prejudice. No distinction will be drawn between the two Final Consent Decrees in this Memorandum and they are discussed as if one.

2. The *amici* participating in this case are as follows: American Academy of Pediatrics, American Public Health Association, Frederic Booth, Public Citizen, Consumer Federation of America, and United States Public Interest Research Group; the states of Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Hawaii, Illinois, Indiana, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New York, North Carolina, North Dakota, Oklahoma, Oregon, Tennessee, Texas, Vermont, West Virginia, and Wisconsin; and the United States Senator from the State of New York, the Honorable Alfonse M. D'Amato.

opments and to report in 18 months. The Task Force Report, a voluminous document, was presented to CPSC on September 30, 1986. In December, 1986, CPSC voted to initiate the present action by invoking Section 12 of the Consumer Protection Safety Act ("CPSA"), 15 U.S.C. § 2061, which contemplates direct emergency action by the United States in federal district court. No formal opportunity was provided for the industry to rebut the Task Force Report. Thus, full development of the applicable facts was left to trial of this case without benefit of a contested administrative record under the following circumstances.

In February, 1987, CPSC formally referred the matter to the Department of Justice to seek a judicial declaration that ATVs present an "imminent and unreasonable risk of death, serious illness, or severe personal injury." 15 U.S.C. § 2061(a). The Department commenced trial preparation with a staff of ten attorneys, aided by the 12,000–page Task Force Report. Various related hearings and notices were initiated by the CPSC in the interim. The CPSC also participated, as did some consumers and dealer groups, at further hearings scheduled by the Senate Commerce Committee.

Settlement discussions were initiated by the United States and defendants in December, 1987, with the encouragement of the Senate Commerce Committee and they proceeded rapidly. These discussions were directed at promptly addressing the government's evaluation of the situation, which in its view called for immediate relief that would focus consumer attention on what it perceived to be the hazards posed, particularly for children and inexperienced operators, by the deceptively benign appearance and unique handling characteristics of ATVs. When the complaint alleging the necessity of abating this "grave hazard" was filed, agreement had already been reached between the parties on the preliminary injunction designed to provide

interim relief—but only until a more definitive final consent decree could be fully negotiated and perfected. The Court then allowed the parties to withhold taking normal litigation steps for a few weeks to determine whether or not they could, as they expected, agree on a final consent decree. The proposed Final Consent Decree and judgment were filed in March, 1988, and these court proceedings looking toward approval or disapproval commenced shortly thereafter.

The Court is required to determine, in its discretion, whether or not the Final Consent Decree settlement, on balance, is by its terms fair, adequate, reasonable and in the general public interest. This task does not require the Court to make factual determinations as to the merits or demerits of the case in all its varied aspects. Nor is there any precise legal standard available for testing the impact of the proposed judgment on all segments of a public that may not always have a common interest.

The Court notes at the outset that the government's decision to settle was made deliberately, after reviewing extensive factual materials and receiving expert, disinterested advice. There is no suggestion that the defendants have withheld information or resorted to improper tactics at any stage of the negotiations. In addition, the government candidly states that its ultimate prospects in the litigation remain uncertain because there are both factual and novel legal obstacles to overcome. This is a correct appraisal.

As the complaint itself clearly indicates, and counsel for the government emphasizes, the primary objective of the United States in accepting a consent settlement is to protect consumers by assuring a wide, effective program designed immediately to alert consumers to operating hazards of ATVs through warnings, advertisements, manuals and training. The program is structured to reach inexperienced past and prospective operators and, in addition, it sets age limit restrictions for the use of certain ATV models.[3] This and much more

---

**3.** The Final Consent Decree approaches the problem of governing the use of ATVs by operators of different ages by setting forth use restrictions based on engine size. Defendants must

is attempted to be achieved by the Final Consent Decree under terms that involve major, continuing expenditures by the defendants.

The Court also notes that if, on the other hand, the Final Consent Decree is rejected by the Court and the case proceeds to trial:

(a) The salutary preliminary injunction which has temporarily been in effect by agreement since the complaint was filed on December 30, 1987, will be vacated.

(b) At a minimum, a two-to-three year delay of any meaningful relief designed to minimize deaths and serious injuries will result.

Against this background, the limited scope of the government's power in this case must be considered because it bears directly on the appropriate form of relief needed to reduce the threat of deaths and serious injuries. It is estimated that there are about 2.3 to 2.4 million ATVs now in use in the United States. Almost all of these ATVs were sold by approximately 5,000 franchised dealers who purchased the ATVs from defendants. None of these dealers are defendants; rather, they remain independent businessmen having rights under separate contracts. Neither the dealers nor their customers nor persons who in turn bought ATVs from their customers can be made subject to a direct injunctive order of the Court. Many present owners of ATVs want to use them in various ways and wish to keep them. Thus, apart from assuring that dealers and users are warned of the hazards before future sales, the only effective total relief which could be suggested would be to order the defendants to remove all ATVs from the market by offering more or less irresistible repurchase prices. Because of the high cost of the vehicles and the fact

defendants believe ATVs are basically safe if operated properly, the defendants state they will never agree to this, and it is a form of relief whose effectiveness is not by any means assured or feasible—even if the government were completely successful at trial. Thus, a system of warning to reach existing owners becomes doubly necessary.

The Final Consent Decree sets forth in minute detail a thorough program designed to alert consumers and reduce hazards. It is complex and procedures for implementation are clearly supported by a program of notification and monitoring constructed so that CPSC may assure strict performance without Court intervention. Many practical, often novel business problems have been anticipated and resolved. *Amici* still desire to tinker with the language here and there; but they are largely uninformed as to the business intricacies involved. No decree designed to protect consumers has ever gone this far in meeting such a massive national consumer problem.

*Amici* have also attempted to persuade the Court it should disapprove these well-considered provisions and order the case to proceed to trial. Basically, they contend the proposed Final Consent Decree does not go far enough in terms of relief and that it will, in any event, be wholly ineffective. The thrust of these generalized objections is that ATVs should be, in effect, removed from the market by provisions prohibiting any sales to minors and directing defendants to repurchase any ATVs tendered to them. While it is obvious that this more stringent relief could be considered at some point if the Final Consent Decree proves to be completely ineffective after a good-faith "best effort" by defendants, the Court cannot insist upon what *amici* desire now because the Court has been provided with no facts which present-

---

use their best efforts to affirmatively represent, through both media representations and explicit instructions to their respective ATV dealers, that ATVs with engine sizes of 70–90 cubic centimeters displacement should be used only by those aged 12 years and older and that ATVs with engine sizes of greater than 90 cubic centimeters should be used only by those aged 16 years and older. Final Consent Decree ¶ G.1, –.2.

The Final Consent Decree does not cover ATV models which are, or have been, marketed for use by children 12 years of age and under. These "child-size" models are not the focus of this case. CPSC has reserved its right to take separate administrative and/or legal action to regulate the use and sale of such "child-size" ATVs. Final Consent Decree ¶ P.

ly indicate the objectives of the Final Consent Decree will not be achieved and, in any event, defendants firmly state they will not agree to such extreme measures.

However, while it appears to the Court that the proposed Final Consent Decree is fair, reasonable and offers potentially effective, immediate relief from the existing "grave hazard," the Court believed that certain provisions of the proposed Final Consent Decree warranted further consideration to ensure consumer protection if the decree just does not work. In this respect, two objectives were of paramount importance to the Court: first, consumers and other interested parties must remain informed of the ongoing progress of the remedial program set out in the decree; and, second, CPSC must at some point retain the freedom to seek further administrative and/or legal relief in furtherance of its statutorily-mandated responsibility to protect consumers should the decree prove ineffective after a reasonable trial period.

Concern for these objectives suggests a need to assure that full access is given the public to information concerning the operations of the decree by making certain that the public library established by the CPSC for this purpose is complete and that undue delays will not occur in release of the information as it becomes available. Further, the discretion given the General Counsel of CPSC to grant extensions of time requirements in the decree must be more limited. And, finally, the "new and substantial evidence" standard set out in the paragraph of the decree reserving additional rights to CPSC under the Consumer Product Safety Act, 15 U.S.C. §§ 2051, *et seq.*, and the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261, *et seq.*, must be made more precise so that CPSC may seek further administrative and/or legal remedies should the consent decree prove ineffective after a reasonable test period. The Court conferred with lead counsel for the parties involved following the oral argument and raised these concerns. Defendants have agreed to accommodate them by certain changes in the proposed Final Consent Decree.

The Court is now satisfied that consumers and other interested groups will have access to current information charting the effectiveness of the decree. CPSC had already planned to establish a hot line and a central library depository where all communications received by its 20 branch offices and by headquarters in Washington, or otherwise, from any source indicating noncompliance with the Final Consent Decree will be publicly filed. This will now include records of any significant extension of time to comply with the decree granted by CPSC's General Counsel. In addition, CPSC's careful monitoring of injuries and deaths will continue to be systematically maintained and regularly filed in the library for public inspection so that it will be possible to know whether the present declining trend in deaths and serious injuries continues. Furthermore, after the Court expressed its concern to the parties that Section 6 of the CPSA, 15 U.S.C. § 2055(a), might serve as an obstacle to prompt public disclosure of some of this filed information, defendants agreed to the following amendments of the decree:

*Paragraph R.1.* (add the following sentence)

Any reports or other materials required to be submitted to the CPSC pursuant to this consent decree shall, after CPSC review and completion by the parties of any necessary final action on the matters to which the report or other material relates, be publicly available in the CPSC Public Reading Room, with copies in the CPSC regional centers, to the extent permitted by the trade secret and confidentiality provisions of Section 6(a) of the Consumer Product Safety Act, 15 U.S.C. § 2055(a), 18 U.S.C. § 1905, and 5 U.S.C. § 552(b)(4).

*Paragraph R.5.* (new subparagraph)

*Repository of Materials:* Subject to subparagraph 1 of this paragraph, the CPSC shall maintain in the CPSC Public Reading Room, with copies in the CPSC regional centers, a public file of all materials submitted to it pursuant to the consent decree and all materials submitted

to it by the public which relate to this final consent decree, to the extent permitted by the trade secret and confidentiality provisions of Section 6(a) of the Consumer Product Safety Act, 15 U.S.C. § 2055(a), 18 U.S.C. § 1905, and 5 U.S.C. § 552(b)(4). Each defendant shall be provided with a copy of any material related to that defendant or its products, or to ATVs in general, and provided an opportunity to comment, at least 20 days before that material is to be made publicly available. Any comments by defendants shall be included with that material in the public file, provided, however, that any such comments that raise issues of confidentiality or trade secrets shall be treated in accordance with the CPSC's normal procedures. Without waiving any substantive rights otherwise provided by law, the provisions of this subparagraph shall apply in lieu of any otherwise applicable procedures required by Section 6(b)(6) of the Consumer Product Safety Act, 15 U.S.C. § 2055(b)(6).

These changes meet the Court's remaining difficulties as to this aspect of the decree. *Amici* will know what is taking place.

The parties have also effectively allayed the Court's concern over the additional danger of unreasonably long delays caused through the granting of extensions, by the General Counsel of the CPSC, of deadlines within which the various provisions of the decree must be implemented. The parties have made the following change to the extension provision of the decree:

*Paragraph R.2.* (add the following sentence)

After granting any extension of time that, alone or in combination with other extensions, enlarges the period of time for complying with an obligation set forth in this decree by more than six weeks, the General Counsel of the CPSC shall file a written statement of the reasons for the extension in the repository of materials described below in paragraph R.5.

The Court's final concern was by far the most troubling. There was no clear agreement between the parties as to the scope of the *res judicata* effect of the settlement. *Amici* argue that because of the wording of the decree it will not be possible either to seek relief from the Court for noncompliance or to invoke provisions of the CPSA for relief if the Final Consent Decree proves ineffective. Paragraph Q—*Additional Reservation of Rights*, appearing at page 58 of the Final Consent Decree, reads in full text as follows:

The United States, through the Consumer Product Safety Commission, reserves the right to proceed administratively under Section 15 of the Consumer Product Safety Act, Section 15 of the Federal Hazardous Substances Act, or both, with respect to ATVs manufactured or distributed by defendants, if it determines, 12 months or more subsequent to the Court's approval of this final consent decree, that new and substantial evidence indicates that a further and more extensive remedy, including recall or repurchase, is warranted. If such new and substantial evidence is available, the government may then also rely upon presently available evidence in determining to commence a proceeding.

The United States, through the Consumer Product Safety Commission, further reserves the right to initiate rulemaking proceedings under the Consumer Product Safety Act and the Federal Hazardous Substances Act with respect to possible hazards alleged to be presented by ATVs in general. It also reserves the right to initiate proceedings under the Consumer Product Safety Act, 15 U.S.C. §§ 2051, *et seq.*, and the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261, *et seq.*, with respect to possible hazards, other than those included in the government's complaint, alleged to be presented by specific defects in individual models of ATVs.

*Amici* contended that since voluminous evidence of the various hazards involved in ATV use is already available from the Task Force Report and other sources, CPSC is effectively foreclosed, under the "new and substantial evidence" standard in Paragraph Q, from seeking administrative

and/or legal relief if the decree proves ineffective. The "new and substantial evidence standard" is undefined and defendants in open court appeared to agree that an increase in deaths and serious injuries after the Final Consent Decree would not be accepted by them as "new and substantial evidence," nor could they even suggest any circumstance which might give rise to "new and substantial evidence."

Obviously, CPSC is foreclosed from using its authority at any time to undermine commitments it has made in agreeing to the decree. However, the public interest necessitates some more definite assurance. If the decree is not effective in reducing deaths and serious injuries after a reasonable time has passed for the decree to be tested in practice, CPSC must be free to proceed within the framework of the statute and consider what further protection for the public may be necessary. In this regard, there will always be particular concern if children over 12 years of age and their parents have not been responsive to the warning information and other precautions established by the decree. Similarly, if some specific provision requires improvement to assure its effectiveness, the Commission should be free to correct the deficiency after notice and opportunity for full discussion. Responsive to these concerns, all counsel for the named parties have agreed to amend the proposed Final Consent Decree by making the following modifications which adequately address the Court's difficulties with this aspect of the decree:

*Paragraph Q* (amend as follows)

Last line, page 58, to line 2, page 59: change "12 months or more subsequent to the Court's approval of this final consent decree, that new and substantial evidence indicates" to "after December 31, 1990,"

Lines 4–6, page 59: delete final sentence of first paragraph

[*Note:* in Polaris decree, the paragraph at issue appears entirely on page 53.]

Amended Paragraph Q thus removes the uncertainty and ambiguity raised by the "new and substantial evidence" language and leaves CPSC free to seek administrative and/or legal relief under Section 15 of the CPSA and/or Section 15 of the Federal Hazardous Substances Act, if after a 2.5 year test period CPSC deems further measures may be necessary to protect consumers from the perils of ATV use. The Court expects this authority will be used sparingly to assure the program developed in the Final Consent Decree succeeds. Provided defendants have fully carried out their side of the bargain and significant progress is being made, the Commission no doubt will devote its initial efforts toward perfecting the program in the light of practical experience under the decree—unless present expectations prove wholly unfounded—rather than attempting the long, drawn-out process of starting anew.

One further matter must be addressed. There are no detailed requirements or specific standards expressed in the Final Consent Decree for determining whether or not defendants have carried out the terms of the settlement by adequately policing their dealers; yet, much depends on a prompt recognition by the dealers that their franchise must be consistent in practice with obligations the decree places on defendant distributors. The distributors' obligation in this regard is expressed only in terms of "best efforts," defined in paragraph 3 on page four of the decree as follows:

"Best efforts" shall include, among other things, an obligation to require, to the extent permissible under Federal and State law, compliance by defendants' dealers, agents, or representatives with the terms of the preliminary consent decree and this final consent decree through the inclusion of a provision as a term in future contracts entered into with dealers and any authorized agents or representatives, and where possible and within a reasonable time, to modify existing contracts with dealers and authorized agents or representatives to impose this duty.

There is no explicit directive, however, which requires a distributor to remove a franchise dealer who refuses to cooperate in implementing the provisions of the de-

cree which the distributor is to enforce by his best efforts. *Amici* point to this deficiency. The Court in interpreting the Final Consent Decree will assume best efforts were not utilized, unless strong evidence is presented to the contrary, whenever a *new* or *renewed* dealer franchise contract fails to require dealer acceptance of decree provisions that defendants' are obligated to use their best efforts to implement and enforce.

To be sure, this somewhat fuzzy "best efforts" problem also exists elsewhere in the proposed decree. In some respects the scope and complexity of the settlement suggests no reasonable alternative standard can be expressed. *Amici* have proposed nothing specific and good-faith efforts supplemented by the persistent enforcement monitoring of CPSC should be sufficient.

With the changes noted in place, the proposed Final Consent Decree will be approved and judgment entered upon receipt of the amended Final Consent Decree incorporating the modifications set out above. As so amended, the Court finds the Final Consent Decree will be fair, adequate, reasonable and in the general public interest. The Preliminary Injunction will remain in effect until a final consent judgment is entered as to all defendants.

SO ORDERED.

/s/  Gerhard A. Gesell

United States District Judge

April 27, 1988.