**Nancy DENNY and Robert Denny, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. 88–CV–1180.**

United States District Court, N.D. New York.

Feb. 16, 1993.

Cook & Butler, Houston, TX (Russell L. Cook, Jr., of counsel), John Scarzafava, Oneonta, for plaintiffs.

Snell & Wilmer, Phoenix, AZ (Warren E. Platt, Douglas W. Seitz, of counsel), Gibson, McAskill & Crosby, Buffalo, NY (Brian P. Crosby, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

Plaintiffs Nancy and Robert Denny filed this suit against defendant Ford Motor Company ("Ford") in November, 1988, stating causes of action for negligence, strict products liability, and breach of implied warranty. They seek recovery for injuries they sustained when the motor vehicle that Ms. Denny was operating, a "Bronco II 4 × 4" manufactured by defendant Ford, rolled over onto its side, pinning Ms. Denny inside. The case proceeded to trial in this district before Hon. Thomas J. McAvoy in November, 1992, after which the jury returned a verdict in favor of plaintiffs on the warranty claim and defendant on the negligence and strict liability claims. The jury awarded plaintiffs $3 million in compensatory damages but also attributed 60% fault to Ms. Denny; therefore, the court reduced plaintiffs' recovery to $1.2 million. See N.Y.Civ.Prac.L. & R. 1411 (McKinney 1976).

Ford filed various post-verdict motions, one of which Judge McAvoy, for reasons

explained below, referred to Magistrate Judge Gustave J. Di Bianco. The magistrate judge issued an Order allowing limited post-verdict discovery pursuant to Fed. R.Civ.P. 27(b). Presently before this court is plaintiffs' appeal of that Order.

## I. BACKGROUND

This matter has developed from what was once a seemingly uncomplicated products liability case into one raising novel and intriguing questions implicating the maxim, *judex non potest esse testis in propria causa.*[1] Upon completing exhaustive discovery, the parties believed that there were no eyewitnesses to Ms. Denny's accident. Given the perceived absence of any eyewitnesses, the parties relied in large part upon accident reconstruction specialists in presenting their proof to the jury. After the parties submitted their evidence and delivered their summations, Judge McAvoy notified them that he had learned from a friend that there may have been an eyewitness to the incident, after all. Judge McAvoy explained the circumstances under which he received the information in a conference in chambers, stating:

> The way it came up, I was working on the charge last night and I called a gentleman that I've known for a number of years on another matter and he said, oh, by the way, I read the article in the Press, and did you know there was an eyewitness to this and on and on and on. I said no, I didn't know that. He could hear the tone of my voice change and he said, well, I'm not sure this person wants to get involved. . . .

Tr. at 5, *provided in* Plaintiffs' Objections to Magistrate's Order exh. "A". Judge McAvoy further informed the parties that he "know[s] what the eyewitness says" about the incident, albeit by double hearsay. *Id.* at 6.

Ford immediately asked Judge McAvoy to disclose the source of his information. Judge McAvoy refused, reasoning that all of the evidence had been submitted and the summations had already been delivered.

---

1. A judge cannot be a witness in his own case.

He believed that allowing the witness to testify at that late date, after the summations had been delivered, would surely cause a mistrial. *See id.* at 3–4. Thus, Judge McAvoy felt it prudent to withhold the identity of the witness. Judge McAvoy then instructed the jury without mentioning the possibility of a new witness. After deliberations, the jury returned the verdict described above.

Ford filed various post-verdict motions, including a motion for a new trial pursuant to Fed.R.Civ.P. 60(b). Most significant, however, is Ford's motion to depose Judge McAvoy pursuant to Fed.R.Civ.P. 27(b) so that it can learn the identity of the alleged eyewitness. Ford urges that the deposition is necessary because the newly discovered witness may support its Rule 60(b) motion for a new trial. In light of the controversy surrounding his disclosure of the information, Judge McAvoy has maintained his refusal to reveal the witness's identity or how the parties can locate the witness. Since Judge McAvoy is the only known individual who has knowledge of the eyewitness's identity, argues Ford, he must be deposed so that a properly supported Rule 60(b) motion can be filed.

Recognizing the obvious conflict of interest that would plague his adjudicating Ford's motion for a deposition, Judge McAvoy referred the matter to the magistrate judge for resolution. Magistrate Judge Di Bianco issued an Order on December 23, 1992 which generally granted Ford's motion to participate in discovery pursuant to Fed.R.Civ.P. 27(b). The Order, however, did not grant specific permission to take Judge McAvoy's deposition; rather, it merely stated that post-verdict discovery is appropriate pursuant to Fed.R.Civ.P. 27(b). The magistrate judge further ordered that any appeal of his Order should be directed to this court, not to Judge McAvoy.

## II. DISCUSSION

Plaintiffs appeal the magistrate judge's order on two grounds.[2] First, they contend that the magistrate judge did not have statutory authority to enter the Order. Second, they contend that the Order was merely advisory in nature and thus does not make a ruling on the subject of Ford's motion, *to wit* to depose Judge McAvoy. The court will discuss plaintiffs' arguments *seriatim.*

### A. Magistrate Judge's authority

Plaintiffs primarily contend that there was no statutory basis for the magistrate judge to enter the order from which they appeal. As plaintiffs correctly point out, the enumerated powers of magistrate judges are set forth in Federal Magistrate Judge's Act ("Act"), 28 U.S.C. § 636 (1988 & West Supp.1992).[3] Of those enumerated powers, only one—that set forth in § 636(b)(3)—is possibly applicable here. That section states, in pertinent part:

> A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

28 U.S.C. § 636(b)(3).

Relying upon *Roberts v. Manson,* 876 F.2d 670 (8th Cir.1989), plaintiffs contend that despite the open-ended nature of this section, it is actually designed to authorize assignment of only administrative and procedural matters; delegation of substantive issues under this statute would be impermissible. In *Roberts,* the Eighth Circuit ruled that a magistrate impermissibly exceeded his jurisdiction when he adjudicated a civil rights complaint pursuant to section 636(b)(3). 876 F.2d at 672–73. In reaching its conclusion, the Court relied upon a portion of the statute's legislative history which arguably gives some indication as to the limited nature of the "additional

---

**2.** Plaintiffs term their appeal as "Objections to Magistrate's Order." Since Judge McAvoy referred the matter to Magistrate Judge Di Bianco to *decide* the motion, and the magistrate judge issued an Order (as opposed to a Report–Recommendation), plaintiffs' challenge is more properly considered as an appeal from that Order.

**3.** The Act was originally promulgated as the Federal Magistrates Act. As of December 1, 1990, however, the name is presumably changed to the Federal Magistrate Judges Act. *See* Judicial Improvements Act of 1990, Pub.L. No. 101–650, § 321, 104 Stat. 5089, 5117 (1990).

duties" magistrate judges may perform under section 636(b)(3). The pivotal segment, consisting of one sentence, states:

> If the district judges are willing to experiment with the assignment to magistrates of *other functions in aid of the business of the courts*, there will be increased time available to judges for the careful and unhurried performance of their vital and *traditional adjudicatory duties*, and a consequent benefit to both efficiency and the quality of justice in the Federal courts.

H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162, 6172, *quoted in Roberts*, 876 F.2d at 672–73 (emphasis added).

The Court in *Roberts* further noted that in other sections of the Act, Congress expressly gave magistrates authority to adjudicate substantive disputes, such as discovery disputes. Congress was careful to specifically delineate those substantive matters over which a magistrate may adjudicate, the Court reasoned; therefore, any general, residual creation of jurisdiction is presumably limited to matters of a "nonsubstantive" nature. *Roberts*, 876 F.2d at 672–73. If Congress had intended for magistrates to adjudicate any additional substantive matters, then it easily could have provided for that authority in one of the specifically delineated sections. The Court concluded that Congress's failure to do so with respect to a given substantive matter leaves one to believe that Congress did not intend for magistrates to adjudicate over that matter. *Id.* at 672–74.

From this language and one other portion of the legislative history, the Court concluded that section 636(b)(3) was intended to apply only to delegation of procedural and administrative matters, and specifically reserves "traditionally adjudicatory duties" to judges. *See Roberts*, 876 F.2d at 672; *accord, United States v. Curry*, 767 F.2d 328, 330–31 (7th Cir.1985). Plaintiffs rely upon this reasoning in arguing that Congress did not create authority for magistrates to adjudicate substantive post-verdict disputes. Since the magistrate judge adjudicated this dispute pursuant to section 636(b)(3), plaintiffs urge, he exceeded his authority in considering Ford's motion, which clearly is not a "procedural" or "administrative" matter.

▇▇▇▇ Plaintiffs correctly assert that magistrate judges are not article III judges and therefore have jurisdiction only as created by statute. *See generally, e.g., Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). Although Judge McAvoy's order referring this matter to the magistrate judge was silent as to the specific statutory authority for such a referral, it is readily apparent that the only possible authority is found in section 636(b)(3). Having independently reviewed the legislative history of section 636(b)(3) and the case authority discussing its terms, this court declines to follow the narrow construction of that statute as articulated in *Roberts*.

The Court in *Roberts* relied upon only small portions of the Act's legislative history in interpreting the breadth of section 636(b)(3). The Act, however, has a more full, enlightening legislative history. In promulgating the Act, and section 636(b)(3) in particular, Congress took special care to emphasize its encompassing breadth. For example, in one particularly revealing section, the legislative history states:

> [Section 636(b)(3) ] enables district courts to continue innovative experimentation in the use of this judicial officer. At the same time, *placing this authorization in an entirely separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates.*
>
> Under this subsection, the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of "pretrial matters."

S.Rep. No. 625, 94th Cong., 2d Sess. 10 (1976) (emphasis added); *see also* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12 (1976) (same statement). This passage is noteworthy in two respects. First, the emphasized language—"placing this authorization in an entirely separate subsection empha-

56

sizes that it is not restricted in any way by any other specific grant of authority to magistrates"—forecloses the *Roberts* assertion that Congress's specific grant to magistrates of "substantive" adjudicative authority in other sections of the Act somehow implicitly limits the magistrate's authority under section 636(b)(3). In drafting the legislation, Congress anticipated such an argument and soundly rejected it by undertaking the extra effort to assert that the "additional duties" provision is not limited by grants of authority that are enumerated in other sections.

Second, Congress's encouragement of district court judges to use section 636(b)(3) to "experiment in the assignment of ... duties to magistrates" and otherwise engage in "innovative experimentation in the use of [magistrate judges]," *see supra,* hardly indicates an intent to limit a magistrate judge's authority to act under that statute. To the contrary, the legislative history of section 636(b)(3) is conspicuously devoid of any explicit manifestation of Congressional intent to limit magistrate's functions to duties that are administrative or managerial in nature. Other courts have reviewed this same language and concluded that "[t]he only limitations on section 636(b)(3) are that the duties be consistent with the Constitution." *See, e.g., In re Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1340–41 (7th Cir.), *cert. denied sub nom., Chromalloy American Corp. v. Marshall,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979).

In accordance with this legislative history, the Supreme Court and numerous Courts of Appeals have interpreted section 636(b) as being expansive, not restrictive, of magistrate judges' authority. The Seventh Circuit was arguably most blunt in *Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d at 1340–41, when it instructed that "[t]he only limitations on section 636(b)(3) are that the duties be consistent with the Constitution and federal laws and that they not specifically be excluded by section 636(b)(1)." The Seventh Circuit's construction of section 636(b)(3) is consistent with the Supreme Court's recent interpretation of that same

provision in *Peretz v. United States,* —— U.S. ——, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). In *Peretz,* the Court ruled that, in the absence of an objection by either party, it is not clear error for a magistrate judge to conduct the *voir dire* in a felony trial pursuant to that statute. Underlying the court's conclusion was its liberal construction of section 636(b)(3):

> The generality of the category of "additional duties" indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen. *If Congress had intended strictly to limit these additional duties to functions considered in the committee hearings or debates, presumably it would have included in the statute a bill of particulars rather than a broad residuary clause.*

*Peretz,* —— U.S. at ——, 111 S.Ct. at 2667. The interpretation of the legislative history by the Supreme Court directly contradicts that espoused by the Eight Circuit in *Roberts, supra.* This court is of course bound to follow the construction by the Supreme Court, and thus similarly concludes that the substantive "additional duties" contemplated in section 636(b)(3) are *not* limited to the specific duties listed in the statute or otherwise discussed in the legislative history. Instead, the magistrate judge may properly adjudicate pursuant to section 636(b)(3) those substantive matters that are not listed elsewhere in the statute. *See In re Applications of United States Attorney,* 784 F.Supp. 1019, 1026 (E.D.N.Y.1992) (citing, *e.g., United States v. Khan,* 774 F.Supp. 748, 753–54 (E.D.N.Y.1991)).

■ This court concludes that Judge McAvoy's referral of this discovery dispute to the magistrate judge was entirely appropriate pursuant to section 636(b)(3). To be sure, other magistrate judges have properly adjudicated matters, including matters affecting the constitutional rights of criminal defendants, pursuant to that statute. *E.g. Applications of United States Attorney,* 784 F.Supp. at 1026 n. 9 (citing, *e.g., Mathews v. Weber,* 423 U.S. 261, 96 S.Ct.

549, 46 L.Ed.2d 483 (1976) (review of social security appeal); *Kahn,* 774 F.Supp. 748 (taking of a guilty plea); *In re Grand Jury Proceedings Dzikowich,* 620 F.Supp. 521 (D.Wis.1985) (determination of motion to quash subpoena)). Given the gravity of matters considered pursuant to this section by other magistrate judges, the magistrate judge's adjudication of this discovery dispute was *a fortiori* permissible in this case. Accordingly, this court rejects plaintiffs' argument that the magistrate judge exceeded his jurisdiction.

## B. *Review of decision*

Turning to the substance of the magistrate judge's Order, plaintiffs challenge his ruling on the ground that it is only advisory in nature. According to plaintiffs, the only question presented to the magistrate judge was whether Ford should be allowed to depose Judge McAvoy. There is no doubt that the magistrate judge refrained from answering that precise question. The magistrate judge plainly wrote, "[t]his court is *not* ruling on whether plaintiffs should be allowed to take the deposition of Judge McAvoy. This Order simply states that discovery should be allowed." Order (12/23/92) at 6.

The magistrate judge's reluctance to compel the deposition of a district court judge is understandable. Still, such an order would have been entirely appropriate, given the explicit terms of the referral, in which Judge McAvoy stated that the case was referred so that the magistrate judge could "decide a motion to defendant Ford Motor Company for a Rule 27(b) Deposition of the Honorable Thomas J. McAvoy." Order (11/24/92) at 1. Pursuant to this language, the magistrate judge would have been within his authority to order the deposition of Judge McAvoy. Rather than remand this matter for a definitive ruling on the propriety of deposing Judge McAvoy in particular, in the interest of judicial economy this court will exercise its broad authority to independently resolve the issue. *See,*

*e.g., Peretz,* —— U.S. at ——–——, 111 S.Ct. at 2670-71 (1991).

■ Plaintiffs wisely do not appeal the magistrate judge's determination that post-verdict discovery is *generally* appropriate here. That ruling appears entirely correct and this court adopts it in its entirety. With respect to discovery of Judge McAvoy in particular, one cannot escape the fact that through his conversation with his friend, Judge McAvoy unintentionally became a witness in this case. *Cf., e.g., Lillie v. United States,* 953 F.2d 1188, 1191 (10th Cir.1992) ("[w]hen a judge [becomes involved in] off-the-record fact gathering, he essentially has become a witness in the case"). That is to say, his knowledge of this case goes beyond facts attained in his judicial capacity; by involuntarily learning facts that were not presented in the record, he transcended his role as judicial officer and became a witness to these proceedings, as well. *Cf. In re Int'l Business Mach. Corp.,* 618 F.2d 923, 929 (2d Cir.1980). As a witness, Judge McAvoy has information that the parties might find valuable in presenting their cases. Viewed from this perspective, it is clear that discovery into Judge McAvoy's knowledge of the events leading to the accident are relevant and thus discoverable and that discovery into *his* knowledge of the facts is appropriate. *See* Fed.R.Civ.P. 26(b)(1) ("[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter of the action ... [including] the identity and location of persons having knowledge of any discoverable matter ...").

■ Under the unique circumstances of this case, however, a deposition seems unduly intrusive. A deposition may place one (or both) of the parties into the awkward position of having to cross-examining the judge who is presiding at trial, a situation which would arguably require the judge's recusal from subsequent proceedings. *See* 28 U.S.C. § 455(b)(1); *see also United States v. Coven,* 662 F.2d 162, 168 (2d Cir.1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982).[4]

---

4. 28 U.S.C. § 455(b)(1) states that a judge shall disqualify himself when "he has ... personal knowledge of *disputed* evidentiary facts concerning the proceeding" (emphasis added).

Moreover, the parties seemingly agree that they need very little information from Judge McAvoy. The only discoverable information that Judge McAvoy could provide relates to his brief telephone conversation with his friend. The information relating to that conversation could easily be ascertained through a few interrogatories, inquiring into the friend's identity and whereabouts and the substance of the conversation. Upon reviewing the arguments of counsel in light of the record in this case and the governing case authority, the court concludes that Ford may conduct discovery into Judge McAvoy's knowledge of the existence of an eyewitness to the incident giving rise to this litigation. Such discovery is limited, however, to the submission to Judge McAvoy of written interrogatories that are narrowly tailored toward attaining that information. By proceeding in this manner, the parties may discover the information necessary to support their post-verdict motions without jeopardizing Judge McAvoy's ability to adjudicate future litigation in this case.

### III.  CONCLUSION

Magistrate Judge Di Bianco's Order is affirmed in part. Ford Motor Company may conduct limited discovery, in the form of written interrogatories, into Judge McAvoy's knowledge of the existence of an eyewitness to the incident giving rise to this litigation. This court retains jurisdiction to resolve any further disputes that may arise out of the matters discussed herein.

IT IS SO ORDERED.