Rubin v. Smith                                    CV-92-273-SD  03/30/95 P

UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEW HAMPSHIRE


Carol A. Rubin, et al


     v.                                          Civil No. 92-273-SD

Philip Smith, Sr., et al


                            O R D E R


     Presently before the court is plaintiff Carol A. Rubin's

motion to vacate the magistrate judge's order appointing a

guardian ad litem on behalf of plaintiff Rebecca Rubin.  Also

before the court is the guardian's motion for protective order,

to which no objection has been filed.


1.  Carol Rubin's Motion to Vacate (document 161)

     Carol Rubin moves for an order vacating the magistrate

judge's order of September 6, 1994, appointing a guardian ad

litem on behalf of plaintiff Rebecca Rubin.[1]

     Carol Rubin contends that the magistrate judge exceeded his

_____

     [1]In said order, Attorney Michael R. Chamberlain was
appointed to serve as guardian ad litem to plaintiff Rebecca
Rubin for the purpose of determining whether Rebecca's best
interests would be served by her withdrawing from or continuing
in this litigation.

authority by appointing a guardian ad litem, which "additionally violated the Plaintiff's due process rights because the Magistrate concluded erroneously and without affording the Plaintiff notice or a proper fact finding hearing and without issuance of a reasoned report and recommendation determining that the interests of the Plaintiff and her daughter were in legal conflict."  Plaintiff Carol A. Rubin's Motion to Vacate ¶ 8.

a.  Magistrate Judge's Authority

The post of United States magistrate judge[2] was legislatively created in 1968 as an adjunct to the "first echelon of the Federal judiciary," H.R. REP. No. 1629, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 4252, 4254, and was intended "to help relieve the burgeoning caseloads of the United States District Courts and the corresponding burdens on federal trial judges," 12 CHARLES A. WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE

_____

[2]Although originally denominated United States magistrates, Congress subsequently added the word "judge" to the title.  See Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321, 104 Stat. 5089, 5117 (1990).  This change marked a "recent trend . . . to vest increasing responsibility and authority in the magistrates . . . ."  In re 4330 N. 35th St., 142 F.R.D. 161, 165 (E.D. Wis. 1992).  Furthermore, the official change in title "is believed will 'help educate attorneys and litigants about the magistrate judges' status as authoritative judicial officers within the federal courts.'"  Id. (quoting Christopher Smith, From U.S. Magistrate to U.S. Magistrate Judges, 75 Judicature 210, 212 (1992)).

§ 3076.1, at 34 (Supp. 1994).

Unlike Article III judges, magistrate judges can assume only as much jurisdiction as the relevant enabling statute will allow.[3]  See Denny v. Ford Motor Co., 146 F.R.D. 52, 55 (N.D.N.Y. 1993) (citing Wingo v. Wedding, 418 U.S. 461 (1974)).  Pursuant to 28 U.S.C. § 636(b)(1)(A),[4] the magistrate judge is empowered to "hear and determine any pretrial matter pending before the court," subject to eight specifically delineated exceptions.[5]  28

---

[3]Legislation relating to the specific duties and limitations of United States magistrate judges in the civil setting is set forth in 28 U.S.C. §§ 631-39 and implemented by Rules 72 and 73, Fed. R. Civ. P.

[4]In 1976, Congress revised, in its entirety, subsection (b) of 28 U.S.C. § 636.  See United States Magistrates--Jurisdiction, Pub. L. No. 94-577, § 636(b)(1)(A), 90 Stat. 2729 (1976). According to the House Report, "the revised law will not unduly extend the Magistrate's authority to hear pretrial matters but it will clarify the broad authority to refer 'any pretrial matter.'" H.R. REP. No. 1609, 94th Cong., 2d Sess. 9, reprinted in 1976 U.S.C.C.A.N. 6162, 6169.  Thus, with the exception of certain dispositive motions, see infra note 5, "the magistrate shall have the authority to not only hear the pretrial matter but also to enter an order determining the issue raised by the motion or proceedings."  Id. (emphasis added).  Moreover, the magistrate judge's determination "is intended to be 'final' unless a judge of the court exercises his ultimate authority to reconsider the magistrate's determination."  Id.; see also Rule 72(a), Fed. R. Civ. P. ("A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter.").

[5]The magistrate judge is statutorily precluded from determining motions (1) for injunctive relief; (2) for judgment

3

U.S.C. § 636(b)(1)(A) (1993).  Moreover, in accordance with section 636(b)(3), "[a] magistrate [judge] may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."  28 U.S.C. § 636(b)(3).[6]

on the pleadings; (3) for summary judgment; (4) to dismiss or quash an indictment or information made by the defendant; (5) to suppress evidence in a criminal case; (6) to dismiss or to permit maintenance of a class action; (7) to dismiss for failure to state a claim upon which relief can be granted; and (8) to involuntarily dismiss an action.  28 U.S.C. § 636(b)(1)(A).

[6]An insight into the breadth of "additional duties" intended to be encompassed by section 636(b)(3) is revealed in the legislative history to said section, wherein Congress notes,

> [Section 636(b)(3)] enables the district courts to continue innovative experimentations in the use of this judicial officer.  At the same time, placing this authorization in an entirely separate subsection emphasizes that it is not restricted in any way by any other specific grant of authority to magistrates.
>   Under this subsection, the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of "pretrial matters".

H.R. REP. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6172; see also Peretz v. United States, 501 U.S. 923, 932 (1991) ("The generality of the category of 'additional duties' indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen."); Denny, supra, 146 F.R.D. at 56 ("the legislative history of section 636(b)(3) is conspicuously devoid of any explicit manifestation of Congressional intent to limit magistrate's functions to duties that are administrative or managerial in nature.").

Section 636 further directs that "[e]ach district court shall establish rules pursuant to which the magistrates shall discharge their duties." 28 U.S.C. § 636(b)(4). In accordance with said congressional mandate, the local rules of this court indicate that the magistrate judge shall hear and determine all nondispositive matters not specifically enumerated as an exception in 28 U.S.C. § 636(b)(1)(A) and that the magistrate judge's decision "shall be final and binding[7] . . . ." See Local Rules for the Magistrate's Duties at 99-100.

The power of the district court to reconsider a matter so decided by the magistrate judge is limited to those circumstances "where it has been shown that the magistrate's order is <u>clearly erroneous or contrary to law</u>." 28 U.S.C. § 636(b)(1)(A) (emphasis added); <u>see also</u> Rule 72(a), Fed. R. Civ. P. (district court shall modify or set aside any portion of magistrate's order on a nondispositive matter found to be clearly erroneous or contrary to law); 7 (pt. 2) JAMES W. MOORE, ET AL, MOORE'S FEDERAL PRACTICE § 72.02[3], at 72-16 (1994) ("If the motion would not dispose of a claim or defense, the magistrate may decide the motion, and the magistrate's decision is reviewable only for

---

[7]Decisions of the magistrate judge entered on nondispositive matters are, however, subject to a right of appeal to the district judge assigned to the case. The procedure regarding such an appeal is addressed <u>infra</u>, note 10.

5

clear error."). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

b. Appointment of a Guardian Ad Litem

(1) Power to Appoint

The authority to appoint a guardian ad litem is set out in Rule 17, Fed. R. Civ. P., which provides, "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Rule 17(c), Fed. R. Civ. P. As the plaintiff correctly notes, this circuit has previously held that "[t]he decision as to whether or not to appoint such a special representative rests with the sound discretion of the district court and will not be disturbed unless there has been an abuse of its authority." Developmental Disabilities Advoc. v. Melton, 689 F.2d 281, 285 (1st Cir. 1982) (citations omitted).

However, plaintiff's suggested literal interpretation of the phrase "the district court" in the quoted language belies the legislative history of the Federal Magistrates Act. As the 1976

6

amendments make plain, the congressional intent was to include "magistrate judge" wherever reference is made in title 28 to "the court" or "the judge".

> The initial sentence of the revised section uses the phrase "notwithstanding any provision of law to the contrary--." This language is intended to overcome any problem which may be caused by the fact that scattered throughout the code are statutes which refer to "the judge" or "the court". It is not feasible for the Congress to change each of those terms to read "the judge or a magistrate". It is, therefore, intended that the permissible assignment of additional duties to a magistrate judge shall be governed by the revised section 636(b), "notwithstanding any provision of law" referring to "judge" or "court".

H.R. REP. No. 1609, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6169; see also In re 4330 N. 35th St., supra note 2, 142 F.R.D. at 165-66 (discussing "the court" in context of Rule 41(e), Fed. R. Crim. P., and determining that said phrase applies equally to district court and magistrate judges).

Accordingly, the court hereby finds and rules that the term "the court" as it is used in Rule 17(c), Fed. R. Civ. P., includes actions taken by a magistrate judge as well as those taken by a district judge.

7

## (2) "Dispositive" or "Nondispositive"?

Both the propriety of the magistrate judge's order and this court's standard of review are dependent upon whether appointment of a guardian ad litem constitutes a dispositive or a nondispositive action.  Although the terms "dispositive" and "non-dispositive" are absent from the language of 28 U.S.C. § 636, they do appear in Rule 72, Fed. R. Civ. P., as well as the local rules of this court.  "Although Rule 72 makes no express reference to § 636, the Advisory Notes make clear that when Congress included the term 'nondispositive' in Rule 72(a), it was referring specifically to those matters not expressly exempted in § 636(b)(1)(A)."  Robinson v. Eng, 148 F.R.D. 635, 639 (D. Neb. 1993) (citation omitted).[8]

The touchstone, therefore, is whether the magistrate judge's determination is dispositive; that is, whether it disposes of a party's claim or defense because "it is only those rulings which

_____

[8]Indeed, when considering whether a motion is dispositive or nondispositive, some courts have reached the latter determination at least in part because the subject motion is not denominated in section 636(b)(1)(A).  See, e.g., Maisonville v. F2 Am., Inc., 902 F.2d 746, 748 (9th Cir. 1990) ("any motion not listed [in section 636 (b)(1)(A)], nor analogous to a motion listed in this category, falls within the non-dispositive group of matters which a magistrate may determine.") (citations omitted); Vaquillas Ranch Co. v. Texaco Exploration & Prod., Inc., 844 F. Supp. 1156, 1162 (S.D. Tex. 1994) ("the term 'dispositive' refers to the list of motions that a magistrate judge may not determine found in § 636(b)(1)(A).").

<u>finally resolve</u> a party's 'claim or defense' which are considered 'dispositive' within the meaning of § 636(b) and *Fed. R. Civ. P. 72*." <u>Robinson</u>, <u>supra</u>, 148 F.R.D. at 640 (emphasis added) (citing Rule 72(b), Fed. R. Civ. P.); <u>see also</u> <u>Adkins v. Mid-American Growers, Inc.</u>, 143 F.R.D. 171, 176 (N.D. Ill. 1992) ("'Dispositive' is merely a term used to describe the motions listed in subsection 636(b)(1)(A), each of which addresses the merits of the parties' claims as opposed to issues collateral to the merits (e.g., discovery requests, protective orders, or other procedural orders)."); <u>McDonough v. Blue Cross of N.E.</u>, 131 F.R.D. 467, 472 (W.D. Pa. 1990) (noting that "Congress has defined civil dispositive matters" by specific delineation in 28 U.S.C. § 636(b)(1)(A)).

As noted in part 1.b.(1), <u>supra</u>, the courts possess an "inherent power to appoint a guardian ad litem when it appears that the minor's general representative has interests which <u>may</u> conflict with those of the person [she] is supposed to represent." <u>Hoffert v. General Motors Corp.</u>, 656 F.2d 161, 164 (5th Cir. 1981), <u>cert. denied sub nom.</u>, <u>Cochrane & Bresnahan v. Smith</u>, 456 U.S. 961 (1982) (emphasis added) (citations omitted); <u>see also</u> <u>Horacek v. Exon</u>, 357 F. Supp. 71, 74 (D. Neb. 1973) (noting that while "parents in all good conscience may desire one remedy . . . it would not necessarily be in the best interests of

9

[their] children" and indicating that "a discreet course would be to provide for the appointment of a guardian ad litem, who would not displace the parents as representatives of the plaintiffs but would be alert to recognize potential and actual differences in positions asserted by the parents and positions that need to be asserted on behalf of the plaintiffs").  In his September 6, 1994, order, the magistrate judge found and ruled as follows:

> Obviously, Harvey Rubin's interests conflict with Carol Rubin's interests since they are on opposing sides in this litigation.  Rebecca's interests conflict with her mother's because Rebecca wishes to withdraw from the litigation while her mother wishes to pursue it.[9]  Rebecca's interests also conflict with Harvey Rubin's because she is suing him while residing with him in Connecticut.  Since all of the parties' interests conflict, the court finds that

_____

[9]Indeed, part of the evidence before the magistrate judge in this regard was a letter from Attorney Richard Y. Uchida, Rebecca's attorney, who opined,

> Following a number of interviews and discussions with a variety of people who have been or are playing an important role in Rebecca's life, along with discussions and personal interviews with my client, Rebecca Rubin, I have reached the conclusion that a voluntary dismissal of her interests in . . . Rubin et. al. v. Town of Salem, et. al. is both in her best interests and a result which she desires - that result being reached freely, voluntarily and intelligently.

Letter of Richard Uchida to all attorneys of record dated March 9, 1994 (attached as Exhibit A to Plaintiff Carol A. Rubin's Motion to Vacate).

> neither parent is a suitable party to
> determine whether Rebecca's best interests
> would be served by voluntary dismissal.
> . . . .
>     Accordingly, the court finds that it is
> necessary to appoint a guardian ad litem who
> shall determine whether or not Rebecca's best
> interests will be served by withdrawing from
> or continuing in this litigation. . . . .
> The costs associated with the guardian ad
> litem shall be born[e] equally by plaintiff
> Carol A. Rubin and defendant Harvey Rubin.

Order of September 6, 1994, at 3-4.

In sum, therefore, the magistrate judge's ruling identifies a _possible_ source of conflicting interests between Rebecca Rubin and her mother, but specifically defers any such final determination until the guardian ad litem submits his report to the court. In this regard, the magistrate judge's ruling is certainly nondispositive since it does not "resolve the substantive claims for relief alleged in the pleadings," Litton Indus. v. Lehman Bros. Kuhn Loeb, Inc., 734 F. Supp. 1071, 1080 (S.D.N.Y. 1990), rev'd on other grounds, 967 F.2d 742 (2d Cir. 1992), and thus Carol Rubin's motion to vacate, irrespective of whatever force it may have on the merits, is therefore premature.

Not being among the list of dispositive motions identified in section 636(b)(1)(A), and neither "finally resolving" nor addressing the merits of the parties' claims, the court hereby finds and rules that the appointment of a guardian ad litem is a

11

nondispositive act as that term is defined in Rule 72(a), Fed. R. Civ. P., and by implication in 28 U.S.C. § 636(b)(1)(A). As such, review in this court of the magistrate judge's determination is limited to the "clearly erroneous" standard. See Rule 72(a), Fed. R. Civ. P.; 28 U.S.C. § 636 (b)(1)(A); Local Rules for Magistrate's Duties at 100.

Upon review of the evidence before it, as well as the authorities cited herein, the court is not "left with the definite and firm conviction that a mistake has been committed," United States Gypsum, supra, 333 U.S. at 395, and therefore plaintiff Carol A. Rubin's motion to vacate is accordingly denied.[10]

---

[10]The court further notes that plaintiff Carol A. Rubin's motion to vacate the magistrate judge's September 6, 1994, order was filed with the court on February 21, 1995. In that nearly five months had elapsed since such a motion would have been considered timely, see Rule 72(c), Fed. R. Civ. P. (a party may not assign as error a defect in the magistrate judge's order to which objection was not made within ten days of being served with same); Local Rules for Magistrate's Duties at 100 ("A party seeking to appeal a decision of the magistrate [judge] shall do so by written motion filed within ten (10) days of such decision."), the court further finds and rules, in the alternative, that plaintiff Carol A. Rubin waived her right to district court review. See McDonough, supra, 131 F.R.D. at 472 ("A party's failure to file a timely appeal to a district judge will constitute a waiver of that party's right to a review by a district judge.").

## 2.  Guardian ad Litem's Motion for Protective Order

Rebecca Rubin's guardian ad litem, Attorney Michael Chamberlain, petitions the court for an order "instructing Carol Rubin to execute an authorization allowing Bridget Jenkins, Esq., an attorney in Connecticut,[11] to confer with and share information with Rebecca's Guardian ad Litem appointed by the United States District Court."  Motion for Protective Order at 3. A similar instruction is sought in order that the guardian ad litem may confer with Nancy LaGanga, a family relations counselor in the Family Division of the Superior Court of Connecticut.  Id. at 4.

In the pursuit of his duties as guardian ad litem for Rebecca Rubin, Attorney Chamberlain "has met with Rebecca at both her mother's and her father's house.  [In addition,] [h]e has also spoke[n] with Rebecca's mother and father, as well as Mrs. Rubin's companion, Theodore Kamasinski."  Id. at 2.  Prior to completing his investigation and report, the guardian ad litem further desires to speak with Nancy LaGanga and Attorney Jenkins because "[t]he Guardian believes that both Ms. LaGanga and Attorney Jenkins possess important information about Rebecca and her family which needs to be considered by the Guardian ad Litem

---

[11]Attorney Jenkins was appointed by the Connecticut Superior Court to represent Rebecca's interests in two separate lawsuits initiated in said court by Carol A. Rubin.

before he completes his report." Id.

Neither Ms. LaGanga nor Attorney Jenkins, however, will speak with Attorney Chamberlain about Rebecca unless he can provide them with "authorizations signed by Rebecca's parents, Carol Rubin and Harvey Rubin, which would allow them to share information with the Guardian." Id. In anticipation of meetings with Ms. LaGanga and Attorney Jenkins in Connecticut on February 10, 1995, Attorney Chamberlain drafted the requested consent authorization forms and delivered copies of same to both Harvey and Carol Rubin. Although Harvey Rubin returned executed copies of the authorizations to the guardian ad litem, Carol Rubin did not.[12] The February 10 meetings were consequently

---

[12]Although Carol Rubin did not return to Attorney Chamberlain signed copies of the consent forms, she did engage in a brief exchange of correspondence on the issue. More specifically, Carol Rubin notified Attorney Chamberlain by telefax on February 9, 1995, that

> Because I have previously suggested that Nancy LaGanga would confirm the findings she made in the family relations recommendation, including the need for joint counseling, I can not now disagree with your conferring with Ms. LaGanga. However, I wish to emphasize that I do not agree with the appointment of a Guardian ad Litem and any authorization I have given is not to be construed as my consent or approval of the Magistrate's order appointing a Guardian ad litem.

Telefax Letter from Carol Rubin to Michael Chamberlain dated February 9, 1995 (attached as Exhibit A to Motion for Protective

canceled and, as of the date of this order, have not been rescheduled. Without the guardian ad litem's report, the court is unable to rule on the motions for summary judgment filed on

---

Order). Despite the reference to "any authorization I have given," Carol Rubin did not execute the consent forms she had been provided with. That same day, Attorney Chamberlain wrote to Carol Rubin indicating his "understand[ing] that your signing of the authorizations will in no way by construed as your consent or approval of my appointment as Rebecca's Guardian ad Litem." Letter from Michael Chamberlain to Carol Rubin dated February 9, 1995 (attached as Exhibit A to Motion for Protective Order). He then reiterated his request for Rubin's signed authorization. Id. Not receiving any reply, Attorney Chamberlain canceled his trip to Connecticut.

However, in a February 10, 1995, letter to Carol Rubin, Attorney Chamberlain noted that he was trying to reschedule said meetings for the following week and again reiterated his need for the signed authorizations. Letter of Michael Chamberlain to Carol Rubin dated February 10, 1995 (attached as Exhibit A to Motion for Protective Order). Moreover, Attorney Chamberlain suggested to Rubin that "[i]f you wish to add language to [the authorizations] memorializing your position that, by executing the authorizations you have neither consented, nor approved, of the Magistrate[']s order appointing a Guardian ad litem, please feel free to do so." Id. Without further correspondence from Rubin, Attorney Chamberlain made his final direct request in a February 21, 1995, letter, in which he asked that Rubin either sign the authorizations previously provided to her or draft and sign her own authorizations. Letter of Michael Chamberlain to Carol Rubin dated February 21, 1995 (attached as Exhibit A to Motion to Compel). Although Attorney Chamberlain conveyed to Rubin that "[b]efore I travel to Litchfield to meet with Ms. LaGanga and Attorney Jenkins, I need to know that they will be able to speak with me," id., he also apprised Rubin of his intent to petition the court for an order "empowering Ms. LaGanga and Attorney Jenkins to confer with [him]" should this last attempt at securing her consent prove unsuccessful, id.. Eight days later, on March 1, 1995, Attorney Chamberlain filed the motion to compel presently before the court.

15

June 2, 1994, and November 7, 1994.[13]

By operation of the All Writs Act, 28 U.S.C. § 1651, "[t]he Supreme Court and all courts established by Act of Congress" are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1994). "This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve "the rational ends of law."'" Harris v. Nelson, 394 U.S. 286, 299 (1969) (quoting Price v. Johnston, 334 U.S. 266, 282 (1948) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 273 (1942))). Encompassed in the "rational ends of law" is the notion that "the courts may rely upon this statute in issuing orders appropriate to assist them in conducting factual inquiries." Id. However, "the All Writs Act cannot support an order . . . that is not 'directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation

---

[13]The June 2, 1994, motion for summary judgment was filed by the Town of Salem and defendants James Ross, Fred Rheault, and Philip Smith, Jr., of the Salem Police Department, while the November 7, 1994, motion for summary judgment was filed on behalf of defendant Harvey Rubin. Action on both motions has been stayed pending the completion of the guardian ad litem's report and this court's subsequent determination whether Rebecca Rubin should remain a party to this litigation.

to a natural conclusion.'" Williams v. McKeithen, 939 F.2d 1100, 1104-05 (5th Cir. 1991) (quoting ITT Community Dev. Corp. v. Barton, 569 F.2d 1351, 1359 (5th Cir. 1978)) (footnote omitted in Williams).

Separate and apart from this statutory grant of authority lies the inherent powers doctrine which "provide[s] a federal court with various common law equity devices to be used incidental to the authority conferred on the court by rule or statute." Barton, supra, 569 F.2d at 1359. Said doctrine "is rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." Id. (emphasis added) (citation omitted).

Carol Rubin's reluctance to give her consent to the guardian ad litem seems to be due, at least in part, to her contention that the magistrate judge was without authority to appoint a guardian ad litem on Rebecca Rubin's behalf. As the court has today affirmed the propriety of the magistrate judge's determination, see part 1.b(2), supra, such reluctance should now subside. However, as this court has also previously noted, without Carol Rubin's consent, the guardian ad litem has been unable to perform his court-imposed duties. This, in turn, has

17

impeded the court's desire to expeditiously act upon several motions currently pending before it.

A "district court may rely on the All Writs Act to control actions or conduct that would inhibit its ability to resolve or manage a case before it." Cinel v. Connick, 792 F. Supp. 492, 497 (E.D. La. 1992), modified, aff'd, 15 F.3d 1388 (5th Cir. 1994) (footnote omitted); see also United States v. Javanmard, 767 F. Supp. 1109, 1111 (D. Kan. 1991) (district court "has wide latitude under the All-Writs Act to construct any remedy necessary to 'achieve justice'"). As the instigator of the current litigation, plaintiff Carol Rubin bears some responsibility to avoid unnecessary delays which result in protracted litigation and the needless expenditures of scant judicial resources.

In the view of the court, plaintiff Carol Rubin's failure to grant the requisite authorizations has inhibited the timely prosecution of this case. In consequence thereof, the court hereby finds and rules that plaintiff Carol A. Rubin shall, not later than 4 p.m. on Monday, April 10, 1995, provide the guardian ad litem with her consent so that he may speak with Nancy LaGanga and Bridget Jenkins, Esq., regarding Rebecca Rubin and her family.

18

<u>Conclusion</u>

For the reasons set forth herein, plaintiff Carol A. Rubin's motion to vacate (document 161) is denied, and the guardian ad litem's motion for protective order (document 164) is granted.

SO ORDERED.

                                        _____
                                        Shane Devine, Senior Judge
                                        United States District Court

March 30, 1995

cc:  C. Rubin, c/o Prof. Richard Hesse
     Wayne C. Beyer, Esq.
     Robert M. Larsen, Esq.
     Jonathan Katz, Esq.
     Richard Y. Uchida, Esq.
     Michael R. Chamberlain, Esq.