Rubin v. Smith                          CV-92-273-SD   03/20/96 P
                    UNITED STATES DISTRICT COURT FOR THE

                         DISTRICT OF NEW HAMPSHIRE


Carol A. Rubin, et al


    v.                                         Civil No. 92-273-SD


Philip Smith, Sr., individually and in
 his official capacity as a Police Officer
 of the Town of Salem;
Fred Rheault, individually and in his
 official capacity as a Police Officer
 of the Town of Salem;
James Ross, individually and in his
 official capacity as Chief of Police
 of the Town of Salem;
Town of Salem, a municipal corporation
 of the State of New Hampshire;
Harvey Rubin


                            O R D E R


    This order addresses the following motions: (1) plaintiff

Carol A. Rubin's motion for reconsideration; (2) Carol Rubin's

motion to expunge exhibit; (3) defendant Harvey Rubin's motion

for summary judgment; and (4) the Salem defendants'[1] motion for

summary judgment.


_____

    [1]The Salem defendants are herein defined to include the Town
of Salem, New Hampshire; Philip Smith, Sr.; Fred Rheault; and
James Ross.

## 1.  Carol Rubin's Motion for Reconsideration, document 194

Plaintiff Carol A. Rubin presently moves the court to reconsider its February 5, 1996, order which, inter alia, granted without prejudice Rebecca Rubin's motion for voluntary dismissal pursuant to Rule 41, Fed. R. Civ. P.  Invoking "fundamental notions of fairness", as well as other, less ethereal, grounds for the requested relief, plaintiff is here before the court for a fourth time objecting to, in essence, the appointment of a guardian ad litem on her daughter's behalf.  For the reasons that follow, such motion is herewith denied.

Plaintiff correctly notes the First Circuit's directive that "require[s] all magistrates . . . to include in their reports," United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam), "clear notice to litigants not only of the requirements that objections must be specific and be filed within ten days, but that failure to file within the time allowed waives the right to appeal the district court's order," id. (citation omitted).  Two observations about this "waiver notice" rule, however, are in order.

The rule in Valencia-Copete was mandated "to protect the rights of *pro se* litigants." United States v. Akinola, 985 F.2d 1105, 1108 (1st Cir. 1993).  At all times relevant to the magistrate judge's initial appointment of the guardian ad litem

2

(September 6, 1994), Carol Rubin was represented by able counsel from the Boston office of the LeBoeuf, Lamb, Greene & MacRae firm. Such counsel did not file their motion to withdraw appearance until September 23, 1994, some seventeen days after the magistrate judge's order. Moreover, said motion was not finally granted by this court until December 15, 1994. Boston counsel opposed, on plaintiff's behalf, Attorney Uchida's March 10, 1994, request for instructions--which precipitated the guardian's appointment--as well as the Salem defendants' June 2, 1994, motion for summary judgment. Thus, plaintiff was not a pro se party at the time of the magistrate judge's September 6, 1994, order, and, as such, falls without the mandate of Valencia-Copete. See Akinola, supra, 985 F.2d at 1108.

Even were the court to assume arguendo that plaintiff was acting pro se at the time, her argument is defective for an entirely alternate reason. The First Circuit's waiver notice "is necessary only as part of a Magistrate Judge's report and recommendation to the district judge, 28 U.S.C. § 636(b)(1)(B), (C), and not when the Magistrate Judge issues a non-dispositive order. 28 U.S.C. § 636(b)(1)(A)." Id. at 1108-09 (emphasis added) (other citation omitted). As this court held, when considering plaintiff's initial objection to the guardian's appointment,

> Not being among the list of dispositive motions identified in section 636(b)(1)(A), and neither "finally resolving" nor addressing the merits of the parties' claims, the court hereby finds and rules that the appointment of a guardian ad litem is a nondispositive act as that term is defined in Rule 72(a), Fed. R. Civ. P., and by implication in 28 U.S.C. § 636(b)(1)(A).

<u>Rubin v. Smith</u>, 882 F. Supp. 212, 217 (D.N.H. 1995).  Under such circumstances, the magistrate judge's appointment order was "self-operating," <u>United States v. Ecker</u>, 923 F.2d 7, 9 (1st Cir. 1991), to which timely challenge was required, and waiver notice language was not necessary.

Plaintiff's motion for reconsideration is denied.[2]


## 2.  Harvey Rubin's Motion for Summary Judgment, document 142

### a.  Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is

---

[2]The court notes that the "waiver" argument was an <u>alternate</u> basis for upholding the magistrate judge's appointment of the guardian ad litem.  As part of its March 30, 1995, ruling, the court reviewed all of the papers and documents before it and concluded that the magistrate judge's ruling was neither "clearly erroneous" nor "contrary to law."  <u>See</u> <u>Rubin</u>, <u>supra</u>, 882 F. Supp. at 217.  This conclusion remains firm.

4

not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995); see also Woods v. Friction Materials, Inc., 30 F.3d 255, 259 (1st Cir. 1994); Maldonado-Denis, supra, 23 F.3d at 581.

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of material fact exists." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), cert. denied, ___ U.S. ___, 115 S. Ct. 2247 (1995).

> A "genuine" issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. Maldonado-Denis, 23 F.3d at 581. In

5

other words, a genuine issue exists "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" Id. (quoting Garside [v. Osco Drug, Inc.,] 895 F.2d [46,] 48 [1st Cir. 1990)]. A "material" issue is one that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995).

"'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . .'" National Amusements, supra, 43 F.3d at 735 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations, . . . rank speculation, or . . . improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992)).

6

b.  The Merits[3]

Plaintiff's claim against Harvey Rubin involves an alleged conspiracy between Rubin and the Salem defendants designed to deprive plaintiff of certain protected civil rights. Acknowledging that the long-running dispute between the Rubins has generated a host of disputed "facts", defendant Harvey Rubin maintains that "none of the disputed facts [are] material to whether plaintiff has offered sufficient proof of a conspiracy between Harvey Rubin and Detectives Smith and Rheault to allow the issue to be decided by a jury."  Defendant Harvey Rubin's Motion for Summary Judgment at 15.

The law of this circuit clearly establishes that "[a] section 1983 claim does not lie absent state action."  Alexis v. McDonald's Restaurants of Mass., 67 F.3d 341, 351 (1st Cir. 1995) (citing Casa Marie, Inc. v. Superior Ct. of P.R., 988 F.2d 252, 258 (1st Cir. 1993); 42 U.S.C. § 1983).  "State action" entails two components: (1) the deprivation has been caused "by the exercise of some right or privilege created by the state, or by a

_____

[3]Carol Rubin moves the court to expunge Exhibit 2 to defendant Rubin's motion for summary judgment, arguing that defendant's new Exhibit 3, filed April 18, 1995, replaced not only old Exhibit 3 but also old Exhibit 2.  See Plaintiff's Motion to Expunge Exhibit ¶ 3.  Upon review of the identified documents, the court concurs, the motion (document 193) is granted, and "new" Exhibit 3 is ruled to supplant both original Exhibits 2 and 3 to defendant Rubin's motion for summary judgment.

rule of conduct imposed by the state, or by a person for whom the state is responsible," and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. (citing Casa Marie, supra, 988 F.2d at 258).

"Where a private individual is a defendant in a section 1983 action, there must be a showing that the private party and the state actor jointly deprived plaintiff of her civil rights." Id. (citations omitted); see also Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989) (for a conspiracy to be actionable under section 1983, plaintiff must show both agreement and actual deprivation of constitutional right). That noted, "'[t]he gist of the [section 1983] cause of action is the deprivation and not the conspiracy.'" Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980) (quoting Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 n.2 (7th Cir. 1975)); accord Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("although the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right") (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).

Although "any pre-trial disposition of conspiracy allegations in civil rights actions" is to be approached with

caution, <u>Gressley v. Deutsch</u>, 890 F. Supp. 1474, 1484 (D. Wyo. 1994), "'[w]hen a plaintiff in a § 1983 action attempts to assert the necessary "state action" by implicating a state official in a conspiracy with private defendants, <u>the pleadings must specifically present facts showing agreement and concerted action.   Conclusory allegations without supporting facts are insufficient,</u>'" <u>id.</u> (quoting <u>Hammond v. Bales</u>, 843 F.2d 1320, 1323 (10th Cir. 1988)) (other citations omitted).

### (1) The "Conspiracy"

Stripped to its core, plaintiff's claim against Harvey Rubin alleges a conspiracy between said defendant and the Salem defendants that was designed to transfer physical custody of Rebecca from plaintiff to Harvey Rubin, thus allegedly depriving plaintiff of some constitutionally protected right.  Despite hard-fought and extensive discovery, the court fails to find sufficient reliable evidence of such a conspiracy.  All things considered, plaintiff appears to be thrusting at apparitions which are, to a large extent, of her own making.

Plaintiff's evidence of "conspiracy" is best summarized in the following excerpt from her deposition:

> Q:  . . . I'm asking you to tell me why you believe that Harvey Rubin conspired with Officer Rheault and Officer Smith to deprive you of some federally protected right?

9

A: Because I was deprived of that right without a New Hampshire Court order or a habeas, that when I was called by the New Hampshire Police and asked for Harvey Rubin's phone number, he was obviously at the police station. When I was threatened with arrest, when I tried to call back and was told my daughter was gone, that I was too late, ten minutes after I gave them a phone number that they needed to get in touch with him, that's why there was a conspiracy. He could not possibly, conceivably, in this world get from Danbury, Connecticut to Salem, New Hampshire in ten minutes or twenty minutes.

Deposition of Carol A. Rubin at 242-43 (attached to Harvey Rubin's Motion for Summary Judgment). Upon such "evidence" plaintiff posits that

it may be reasonably inferred that on June 13, 1990[,] Harvey Rubin and a Salem Police Officer met and jointly decided that the New Hampshire Court process, they both knew at that time was required to enforce an out of state custody decree, would not be offered to Carol or Rebecca Rubin. Additionally, it may be inferred from Carol Rubin's testimony that she specifically requested the Salem Defendants to afford her due process. Moreover, it is clear that Harvey Rubin could not have succeeded in avoiding intervention of the New Hampshire Court without the overt assistance of the Salem Police Defendants. The Plaintiff need show no more to sustain her claim that Harvey Rubin has been implicated as a state actor.

Plaintiff's Objection at 15 (citation omitted). The court disagrees.

The evidence before the court amply demonstrates that Harvey Rubin learned of the whereabouts of his daughter Rebecca on June 12, 1990, from the national non-profit organization Child

10

Find of America, Inc.  See Affidavit of Carolyn Zogg ¶ 4 (attached to Harvey Rubin's Motion as Exhibit 5).  Upon receipt of this information, Harvey Rubin immediately set off to Salem, New Hampshire, to verify same.  Seeing Mr. Kamasinski, Carol Rubin's boyfriend, leaving the home at the address he was given, Harvey Rubin telephoned the Missing Persons Unit (MPU) of the Connecticut State Police and left messages there to the effect that he had located his daughter.  He thereafter went to the Rockingham County Courthouse in Exeter, New Hampshire, to obtain a habeas, or "pick-up", order.  While in the process of completing such papers, Harvey Rubin received a telephone call, at the courthouse, from an individual at the Connecticut MPU informing him that Rebecca had been picked up from her school and was being held at the Salem Police Department.  Harvey Rubin then left the courthouse, without obtaining the habeas order, and went to the Salem Police Department.  Upon showing proper identification and a copy of the Connecticut custody order,[4]

---

[4]As to plaintiff's assertion that the Connecticut custody order is invalid, the court remains unpersuaded that the evidence can support same.  In any event, this court will refrain from engaging in impermissible second-guessing of a state court's decision, especially when such decision pertains to family law matters and involves a state other than the one wherein this federal court sits.  The United States District Court for the District of Connecticut has, however, rejected a similar claim previously raised by plaintiff. See Rubin v. Judicial Review Council, Civ. No. 2:91CV00418 (AVC), slip op. at 7-9 (D. Conn. Apr. 2. 1993) (Latimer, Magistrate J.), aff'd on reconsideration,

Rebecca was released to Harvey Rubin, and the two returned to Connecticut, where they remain today. Deposition of Harvey Rubin (Volume II) at 27-57 (attached to Plaintiff's Objection).

Despite the generous treatment accorded to the nonmovant in summary judgment proceedings, brevis disposition of such party's claims "'may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" National Amusements, supra, 43 F.3d at 744 (quoting Medina-Munoz, supra, 896 F.2d at 8) (other citations omitted). Plaintiff's evidence, in toto, merely points "to smoke but not fire, and 'smoke alone is not enough to force the defendants to a trial to prove that their actions were not' improper." Packish v. McMurtrie, 697 F.2d 23, 27 (1st Cir. 1983) (per curiam) (quoting Manego v. Cape Cod Five Cents Sav. Bank, 692 F.2d 174, 177 (1st Cir. 1982)). Consequently, the court finds and rules that a conspiracy has not been established.

### (2) The "Deprivation"

Plaintiff's failure to establish any "conspiracy" between Harvey Rubin and the Salem defendants notwithstanding, plaintiff's evidence likewise fails to substantiate any alleged

---

(D. Conn. June 7, 1994) (Dorsey, J.), aff'd, No. 94-7685, slip op. at 2 (2d Cir. Mar. 28, 1995).

"deprivation" critical to the continued vitality of the section 1983 claim.  See Landrigan, supra, 628 F.2d at 742.

Carol Rubin's argument characterizes the conduct of all named defendants as allegedly causing a deprivation of some constitutionally protected liberty interest.  Support for such argument is purportedly drawn from two New Hampshire statutes affecting children within the jurisdiction:  the Child Protection Act, RSA 169-C (1994 & Supp. 1994) and the Uniform Child Custody Jurisdiction Act (UCCJA), RSA 458-A (1994).  Regarding the former, the court finds its dictates inapposite to the current controversy.  As to the latter, plaintiff's attempt to marshal such statute in support of her argument turns the purpose of the statute on its head.  The UCCJA was enacted to prevent the very same behavior that has taken place in the aftermath of the Rubins' divorce; namely, removing a child of the marriage from the state and instituting, or attempting to relitigate, custody proceedings in a different state in order to obtain a more beneficial custody disposition.

Carol Rubin, whether she chooses to formally acknowledge it or not, had both notice of the January 2, 1990, Connecticut custody proceedings and the opportunity to appear and be heard. The fact that she voluntarily chose to ignore such proceeding

13

does not render what transpired invalid or unenforceable.
Summary judgment is herewith entered in favor of Harvey Rubin.

## 3. Salem Defendants' Motion for Summary Judgment, document 105

Of the four counts applicable to the Salem defendants as stated in plaintiff's amended complaint, only two and part of a third remain in issue.[5]  In each of the remaining claims, one or all of the Salem defendants are alleged to have deprived Carol Rubin of some constitutional right,[6] for which she seeks redress pursuant to 42 U.S.C. § 1983.

Plaintiff's repeated and impassioned arguments to the contrary, the court simply finds no error of constitutional dimension in the conduct of the Salem defendants.  Custody of Rebecca was modified by the court of jurisdiction in Connecticut.  In derogation of the terms of the modified custody decree, plaintiff refused to return with Rebecca to Connecticut.  This course of conduct led to the issuance of an arrest warrant for

---

[5]Rebecca Rubin's claims against all defendants have been voluntarily withdrawn and, consequently, any claims asserted by her or on her behalf are no longer properly before the court.

[6]The catalogue of rights allegedly violated include, inter alia, a First Amendment right of access to the courts, an unspecified Fifth Amendment right to liberty, a Fourteenth Amendment substantive due process parental right/familial association liberty interest, and a denial of equal protection.

Carol Rubin and Rebecca's entry into the National Crime Information Center (NCIC) computer as a "missing" child.

It is the NCIC posting which fatally undercuts the supports upon which plaintiff's allegations are fabricated. The deposition testimony of Corporal Kim E. Bossey, which plaintiff has failed to rebut, properly or otherwise, demonstrates the significance of the NCIC posting and establishes why no reasonable juror would be able to find a constitutional deprivation in the Salem defendants' actions.

At the time Rebecca was physically turned over to her father, Corporal Bossey served as Commander of the New Hampshire State Police's Missing Persons Unit. Deposition of Kim E. Bossey at 10 (attached to Salem Defendants' Response to Plaintiff's Objection as Exhibit 19). When asked at her deposition about the procedures required to act on an out-of-state custody decree, Corporal Bossey drew a distinction between a simple custody dispute and an NCIC-identified missing child.

> A. . . . if you're saying that mom has taken the daughter, Dad's got custody papers, have dad come to one of our courts, get the temporary custody order issued out of this court here in New Hampshire, then the police can act on that order. But it's a different story if a child's in NCIC and they're a missing person and there's other circumstances, you know. They [the police] can go and see if they can locate the child because the child's in the national crime information computer.
> . . . .

15

A. If someone is a missing person or, well, missing child, and they're in the NCIC computer as a missing child, then we [the police] can get a missing child, we can do something about that, because they're in the computer. <u>That gives us authority to act</u> on that.

Q. . . . If it were the case that the [child] were in the NCIC computer would there be still a requirement of a court proceeding?

A. No.

Q. Why is that?

A. Because they're in the computer and they have been entered by another law enforcement agency as a missing child.

Bossey Deposition at 56, 58 (emphasis added).

When specifically asked about the physical transfer of custody relative to the facts at bar, Corporal Bossey testified as follows:

Q. . . . If -- based on your training and experience, corporal, if the Salem Police came into contact with Rebecca Rubin and had this piece of paper [the NCIC report] available to them when they came into contact with her --

A. Um-hum.

Q. -- and based on this with this piece of paper returned Rebecca Rubin to her father, did they do anything wrong in not going to Rockingham Court.

. . . .

A. I as a Salem Police Officer or as a state police officer would want to see Mr. Rubin's court paper from another state. But if I had this as a missing juvenile, missing person, I would take her into my -- I don't want to say custody because I'm not arresting this little girl, but you -- I would take her into my care, so to speak, and then start finding out who has custody of the child and getting them returned to their proper custodial -- custodian, I should say, because it could be a parent or another custodian.

16

Q. BY MR. BLOSS: So if a purported custodial parent showed up at your police station with what appeared to be certified court records from another state plus the NCIC hit, --

A. Um-hum.

Q. -- that in itself is sufficient, based on your training and experience, is sufficient to give custody [of] that juvenile to the -- to that person; is that correct?

A. It could be.

. . . .

A. It could be sufficient. But you want to make sure that you contact the originating agency with the state police Troop A in Southbury[,] Connecticut, according to this, and say, okay, I have an NCIC printout. Did you in fact put this child in. Yes, we did. Who has custody? Mr. Rubin does. Okay, fine. And I'd want to see the documentation before I turned the child over.

Id. at 78-79. Dennis O'Brien, then a sergeant in the Salem Police Department, explained in his deposition what procedures were followed before Rebecca was released into her father's custody:

Q. . . . What procedures were filed -- followed, to the best of your knowledge, prior to turning Rebecca over to Mr. Rubin?

A. My recollection is Mr. Rubin came to the police department with documents, court papers. I believe he had one of the fliers. He had the NCIC hit. All of the paperwork, all of the documentation, conversation with Connecticut indicated that Mr. Rubin was the custodial parent. He was the one with rights in this case to the point that Connecticut had even issued a warrant for parental abduction for the mother. All the paperwork was in order. The child was released to her father.

17

Deposition of Dennis O'Brien at 39 (attached to Harvey Rubin's Motion for Summary Judgment).

Plaintiff' claims are all founded upon the notion that the Salem defendants inappropriately removed Rebecca from the school grounds and illegally (read, without a New Hampshire court order) released her to Harvey Rubin. On the basis of the evidence now before it, the court finds and rules that no reasonable juror could conclude that the Salem defendants acted in a manner designed to be or actually resulting in a deprivation of Carol Rubin's constitutional rights.

There being no constitutional deprivation, there can be no relief under 42 U.S.C. § 1983. See, e.g., Rockwell v. Cape Cod Hosp., 26 F.3d 254, 256 (1st Cir. 1994) (a section 1983 plaintiff "must show both the existence of a federal constitutional or statutory right, and a deprivation of that right by a person acting under color of state law") (citing Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993) (citing Willhauck v. Halpin, 953 F.2d 689, 703 (1st Cir. 1991))). Similarly, plaintiff's equal protection claims must give way for want of proof. See, e.g., Alexis, supra, 67 F.3d at 354 (to avoid summary judgment on equal protection claim, plaintiff must "tender competent evidence that a state actor intentionally discriminated against her because she belonged to a protected class") (citations omitted). Plaintiff's

18

municipal liability claim is likewise withered by the absence of a deprivation of constitutional dimension.  See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989) (successful municipal liability claim under section 1983 requires, inter alia, a demonstration that town policy or custom violates some federally protected right).  In consequence thereof, the Salem defendants' motion for summary judgment is granted in its entirety.  This case is closed.


Conclusion

For the reasons set forth herein, the following orders shall issue:  (1) Carol Rubin's Motion for Reconsideration (document 194) is denied; (2) Carol Rubin's Motion to Expunge Exhibit (document 193) is granted; (3) Harvey Rubin's Motion for Summary Judgment (document 142) is granted; and (4) the Salem defendants' Motion for Summary Judgment (document 105) is granted.

All matters having been disposed of, the clerk shall enter final judgment in this case.

SO ORDERED.


_____
Shane Devine, Senior Judge
United States District Court

March 20, 1996

cc:   Paul McEachern, Esq.
      Wayne C. Beyer, Esq.
      Robert M. Larsen, Esq.
      Jonathan Katz, Esq.